CALEDONIA,
March,
1838. BLISS N. DAVIS *v.* WATERMAN & NOYES, STRONG & DELANO
and F. A. MUNSON.

A clerk in a country store has power, in the absence of his employer, to
receive pay on the demands left in his care, and to commence actions
thereon, when necessary for their security. He has also power to em-
ploy counsel to defend an action, when necessary to the protection of the
rights of his employers, in relation to the action so by him commenced,
and his proceedings, legally taken, are binding on his employers.

THIS was an action of book account, commenced before a
justice of the peace, and appealed to the county court, where
judgment to account was rendered, and an auditor ap-
pointed, who reported that the plaintiff's account occurred
under the following circumstances; to wit.—

John B. Huntoon was indebted to Waterman and Noyes in
the sum of $130,00, to Strong and Delano $80,00 and F.
A. Munson $40,00. Huntoon fraudulently deeded his farm
and caused his personal property to be attached upon two
writs returnable in Washington. Delano and Waterman
were both absent, having gone to Boston. The clerk in
Strong & Delano's store caused the aforesaid property to be
attached at the suit of Strong & Delano. F. A Munson follow-
ed with his attachment and Charles Waterman, a young man
of seventeen years old and who had been a clerk in Water-
man & Noyes' store, from June to 27 October, the time of
the attachment, caused the same property to be attached on
Waterman & Noyes' demands. There was more than
sufficient property to pay off the demands, if the property
could be held, or in other words, if the suit in Washington
could be defeated; to effect which, Shepherd, the clerk of
Strong & Delano, called on Charles Waterman, informing
him that the presumptions were strong, that if a lawyer
should be sent to defend the suits in Washington, they might
be defeated, and inquiring whether the firm of Waterman &
Noyes would join in sending to make such defence, and the
plaintiff was spoken of as a suitable person to be employed for
that purpose. Charles Waterman replied, that, if Strong &
Delano and Munson should make up their minds, that it would
be advisable to send and defend the suits, Waterman &
Noyes would pay their proportion of the expenses, and this
assurance was several times given. Shepherd and Munson
informed plaintiff of what had passed between them, and

CALEDONIA,
*March,*
1838.

Davis.
*v.*
Waterman &
Noyes, *et. al,*

Charles Waterman and desired the plaintiff to proceed to Washington and defend against said suits, which he did, and defeated them; so that the property was holden on the attachment of these defendants, and their debts satisfied out of the same; and for that service this suit was brought.

The auditor also reported that afterwards, when Waterman was informed of the plaintiff's success in the business, he replied, " he has done well and ought to have his pay. "

The auditor found for the plaintiff, and the County Court accepted the report. To which the defendants excepted.

*L. B. Peck,* for defendants.

The clerk was a *special* agent, and the plaintiff was bound to inquire as to the extent of his authority. The retainer of the plaintiff was not an act coming within the scope of his agency, and the defendants are not bound by it. (*Hogg* v. *Snaith,* 1 Taunt. 347. *Hay* v. *Goldsmidt,* cited in 1 Taunt. 349. *The East India Company* v. *Hinsley,* 1 Esp. N. P. Cas. 111. *Gibson* v. *Colt,* 7 Johns. Rep. 390. *Beals* v. *Allen,* 18 Johns. Rep. 363. *Rossiter* v. *Rossiter,* 8 Wendell, 444. *Fenn* v. *Harrison,* 3 Binn. Rep. 757.)

The declaration of *Waterman* that the plaintiff " had done well and ought to be paid," cannot be construed into an approval and adoption of the act of the clerk as one by which he was willing to be bound. It is just such a remark as one would make though he denied his liability. It was the expression of his opinion as to the management and conduct of the plaintiff, rather than an admission of his liability. (*Fenn* v. *Harrison, Beals* v. *Allen, Rossiter* v. *Rossiter,* cited above.)

*Plaintiff, pro se.*

1. The nature of a clerk's duties and employment is such as to authorise him to bind his employer in a case like the present. An important part of his business is to attend to the interest of his employer in the collection of his debts.

2. As an authority of the clerk in this case to bind his principal may be presumed from the nature of the employment, so the same presumption arises from the subsequent acquiescence of Waterman, and a small matter will be evidence of such assent. (Paley on Agency, 143. Salkeld's Reports, 442.

And if, with a knowledge of all the circumstances, an em-

CALEDONIA, ployer adopts the acts of his agents for a moment, he is bound
March,
1838.    by them.   (Paley on Agency 144 and 5.   2 Term R. 188
_____   in note a.   4 T. R. 177.   *Amory* v. *Hamilton*, 17 Mass.
Davis.
v.     R. 103.   *Kingman* v. *Pearce*, 17 Mass. R. 247.   *Froth-*
Waterman & *ingham et. al.* v. *Haley et. al.* 3 Mass. R. 68.
Noyes *et. al.*

The opinion of the Court was delivered by

COLLAMER, J.—The question, in this case, entirely de-
pends on the extent of the power of the clerk of Waterman
& Noyes, *under the circumstances*, then existing.

That the clerks, in our country stores, with whom are left
the goods and demands of our merchants, have charge of
both, and, in the absence of the principals, have power to
receive pay on the demands, and to institute suits for their
security, where an emergency arises, there can be no doubt,
and it is conceded in this case.   It is generally done.   It
was done by the clerk in this case, and was ratified and ap-
proved by his employers, who took the avails.

But it is insisted, that the clerk could not go further, and
employ an attorney to defeat the previous fraudulent attach-
ment.   But this latter power is absolutely necessary, as an
incident of the former, or the former power, existing for the
security and advantage of the merchant would, frequently,
be of no avail.   Were a fraudulent attachment or sale of a
debtor's goods, made in the absence of the merchant credi-
tor, as in this case, and the parties to such sale were, with
the goods, leaving the state, an immediate attachment is ne-
cessarily made by the clerk.   Now, a suit may be brought
by these persons, against the attaching officer, and the whole
case be determined before the merchant could return from
an ordinary journey to market.   Most clearly the clerk might
have power to employ counsel to defend the merchant's
rights, in such case, and to render effectual the attachment
which, it is granted, he has power to make.   It would other-
wise be useless.   If the clerk may employ counsel, he may
join others, who have a common interest in so doing.   If
he may defend the merchant's rights in his absence, in rela-
tion to the demands left with him, he may do so in any legal
manner his discretion may dictate.   In this case he
joined others in employing the plaintiff, as an attorney, to
defeat the first fraudulent attachment, and thus secured his

employers' debt.   And to render effectual the attachment he
had made thereon, he judged it better so to do, at the common
expense of all the defendants,  than to leave his employers
to contest a doubtful suit, alone.   He judged rightly.  It suc-
ceeded, and his employers, on their return, did not repudiate
the attachment he made, but pocketed the fruits of the en-
terprize, and should pay the expenses which attended it.

Judgment affirmed.