## A. J. SOULE *v.* PATRICK DOUGHERTY.

### *Book Account. Agency.*

If A purchases a quantity of goods and intrusts them to B, to sell, (as the property of A,) but gives B no authority to purchase in addition to those delivered, and B assumes the authority to purchase goods in the name and on the credit of A, by so doing B exceeds the powers of his agency, and A is not liable to the vender, for the goods thus purchased.

And where the agency has terminated, except for the purposes of rendering an account to the principal, and the agent, without any necessity to justify an ex tension of his powers by implication, and without the knowledge or consent of the principal, commences suits in the name of the principal, upon notes or demands taken by him in the principal's name, the agent exceeds his power, and the principal is not liable for the costs that accrue upon the said suits.

And where the debtors were committed to jail upon the suits thus commenced by the agent, and the principal discharged them from imprisonment, it was held,— even if the principal, by this act, had created a liability against himself, that book account was not the appropriate remedy to enforce the liability thus created.

BOOK ACCOUNT. The action was commenced before a justice of the peace, and came to the county court by appeal. Judgment to account was rendered in the county court, and an auditor was appointed, who reported the facts substantially as follows:—

The plaintiff presented the following account:—

PATRICK DOUGHERTY TO A. J. SOULE,            DR.

| | | | |
|---|---|---|---|
| 1. April 19, 1850, to 19½ doz. Eggs, at 10 c. | | | $1,95 |
| 2.      "    "    to 3 doz. Pipes, | | | 15 |
| 3.      "    "    to ½ doz. Tumblers, | | | 50 |

$2,60

By Cash,                                $2,10————

50

4. July 22, Fees on three writs, you *v.* Flinn and others,                                8,55
5. Sept. 25, Fees on two Exs., you *v.* John Sherman and John O'Brian,                     6,36

$15,41

As to the first three items of the account, it appeared that the articles amounting to $2,60, were bought at one time by Thomas Dougherty, the brother of the defendant, and without the defendant's knowledge or authority expressly given. That the defendant purchased a quantity of goods of one Loomis, and delivered them to Thomas, to sell, upon an agreement with Thomas, that the goods should be, and should be called, the property of the defendant, that Thomas should sell them in the name of the defendant; that Thomas might have the avails and profits of the goods, provided he paid Loomis for the goods, otherwise not.

Thomas sold out the goods in the name of the defendant, but never paid Loomis for them. He began to sell the goods in March, 1850, and ended the business the 8th day of May, following. He had no authority from the defendant to buy goods and make the defendant chargeable therefor. On the 19th day of April, 1850, he assumed such authority and made the bill of the three first items with plaintiff.

As to the 4th and 5th items of $8,55 and $6,36, the auditor finds that these were for officer's fees for service of writs, for arresting and committing to jail the defendant's debtors, upon suits commenced by M. Scott against them, in the name of the defendant, at the request of Thomas Dougherty, without the knowledge of defendant. The auditor found that the defendant was residing within three or four miles of the place where the goods were sold, at the time the suits were brought, and within about six miles of the office of M. Scott. · That the agency of the said Thomas was ended when the said suits were brought, and that said Thomas had no agency for collecting the debts, and that no necessity existed, in order to save said debts, to commence said suits instantly, and without taking time to consult the defendant. That defendant was informed, a few days after said suits were commenced, that the same were pending in his name, that defendant done and said nothing about them.

That judgments were obtained in said suits, and executions issued. That defendants Sherman, Flinn and O'Brian were committed to jail, and that the defendant discharged them from jail, by a writing to the officer, saying that he might discharge the defendants from imprisonment, as he had no debts against them.

The county court, February term, 1851,—BENNETT, J., presiding, rendered judgment for the plaintiff to recover of the defendant, items 4 and 5, charged in plaintiff's account, and interest upon the same, and disallowed the balance of fifty cents upon the three first items. Exceptions by defendant.

*H. B. Smith* and *C. Beckwith* for defendant.

If Thomas had a right to collect the debts *for his own benefit,* he cannot make the defendant liable for the expense. But the better conclusion is, that no such agency, nor an agency of any kind, remained in Thomas, after the 8th of May.

· The happening of any subsequent event cannot give the plaintiff a right to charge on book. *Slason* v. *Davis,* 1 Aiken 73. *Nason* v. *Crocker,* 11 Vt. 463.

*Hubbell & Bouge* for plaintiff.

1. Thomas Dougherty had full authority to use the name of the defendant in the management of his store — the goods were the

defendant's until paid for; and his interest required that the debts accruing for the goods, should be collected, to make up the necessary amount to pay him.

2. The plaintiff, being a public officer, was bound to receive and execute the precepts when presented. He could not stop to settle the private agreement between the nominal plaintiff and third persons. It was not competent nor according to common usage, for him to demand his fees in advance. His proper course was to receive and execute the precept, and charge his services to the defendant, who was the party of record.

3. The fact that the defendant exercised control over the matter, by discharging the debtors from jail, is also an important one in the case.

The opinion of the court was delivered by

ROYCE, CH. J. In denying the right of the plaintiff to recover for the goods charged in his account, the court below were clearly right. There was no color of authority for taking up the goods on the credit of the defendant. The remainder of the account consisted of the plaintiff's fees, as an officer, upon certain writs and executions, issued in the name of the defendant, against the signers of the notes taken by Thomas Dougherty. And the general question is, whether the defendant became legally responsible to the plaintiff for those charges.

We learn from the auditor's report, that Thomas Dougherty was the defendant's agent for the purpose of selling certain goods, which the defendant had purchased on credit of one Loomis. This appears to have been the extent of the *agency*, although there was a further provision in the contract, by which Thomas could entitle himself to the avails of the goods, provided he paid the defendant's debt to Loomis. Any act of Thomas within the scope of his agency for selling the goods, should accordingly be referred to his employment as agent, and treated as the act of the defendant. But if anything was done by Thomas beyond the proper limits of that agency, and for the purpose of enabling himself to pay Loomis, and thereby to purchase the defendant's interest in the avails of the goods, it should be referred to the latter branch of the contract, and considered as having been done in his own right; or, at least, with a principal view to his own advantage.

That the agency of Thomas Dougherty authorized him to sell the goods on credit, and take notes from the purchasers in the manner he did, if he acted with a due regard to the defendant's interest, is undoubtedly well settled — 2 Kent 622, Smith's Com. Law, 105. Paley on Ag. 26. But the question arises, whether he had authority from the same source, and under the circumstances appearing in the report, to attempt the collection of the notes by suit. In the first place, it would seem that his agency, strictly considered, had terminated, except for the purpose of rendering his account, before he caused the suits to be instituted. It is found that he completed the sales in May, and the suits were commenced in July, after. At that time his apparent duty, as a mere agent, was simply to surrender the notes to the defendant. In the next place, though the agency should be deemed to have continued, yet a collection of the notes, *by the prosecution of suits upon them*, was not within the terms of it; nor is such a proceeding ordinarily understood to come within the powers or duties of an agency to sell. Neither was there in this instance, any pressure of circumstances, as in *Davis* v. *Waterman et al.*, 10 Vt. 526, and *Felker* v. *Emerson*, 16 Vt. 653, which justify an extension of the agent's powers by implication, on the ground of necessity. The defendant was living in the vicinity, and if Thomas designed to act in the character of an agent, it was his obvious and imperative duty to obtain the defendant's consent to the course pursued, before it was resorted to. Hence we conclude that, in the sole capacity of agent, Thomas was not authorized to commence and prosecute the suits. At the same time, we think it sufficiently apparent that his purpose in those proceedings, was not to execute a mere agency, but to secure the benefits of the special provision in the contract with the defendant. It may, indeed, have been expected, that Thomas would use the avails of the goods, as means of paying Loomis; and to such an appropriation of them, the defendant's license should perhaps be implied. But as it was optional with Thomas whether to act at all upon this part of the contract, it would be most unreasonable to hold that, in attempting to execute it, he could subject the defendant to expense without some corresponding benefit. And the suits having been productive of no actual benefit to the defendant, the costs and expenses incurred could not regularly constitute the ground of any legal claim against him.

It appears that judgments were recovered in the suits, and the debtors committed to jail, upon the executions; and it only remains to inquire how the case was affected by the act of the defendant in releasing the debtors from imprisonment. That act was evidently not intended as a ratification, but rather as a disavowal of what had been done. It must be considered, however, that the defendant thereby discharged the debts, so far at all events, as his own interest could ever be concerned. And perhaps by the same act, he also created a liability to some extent against himself. That would probably depend upon the pecuniary responsibility of those debtors. But the action of book account cannot be an appropriate remedy, even in favor of Thomas Dougherty, to enforce the liability thus created; and much less, in favor of those persons who performed service or expended money at his request, in the attempted collection of the notes. To hold the action maintainable in the former case, would be to carry the qualifications of the rules laid down in *Slason* v. *Davis*, 1 Aik. 73, much further than they have ever been extended; and to sustain the present suit, would be, moreover, to recognize this form of action as available, even where no legal privity of contract exists between the parties.

The judgment in favor of the plaintiff on the report is therefore reversed, and judgment entered for the defendant.