## FAY & BRYANT *v.* LOREN RICHMOND.

*Principal and Agent. Ratification.*

The defendant authorized F. to dispose of the defendant's horse, and have all he could get for it over $175; at the same time telling F. he would take a white-faced mare owned by the plaintiffs at $45. Subsequently F., in pursuance of that authority, disposed of the horse to the plaintiffs for said mare and the plaintiffs' note of $137.50, provided the defendant would take the note; and F. and the plaintiffs thereupon informed the defendant of the terms of the contract, and the defendant consented thereto and took said note payable to himself. The plaintiffs claimed that F., in the sale, warranted the horse sound. The defendant denied that F. acted as agent in the transaction. *Held* that F. in his contract with the plaintiffs acted as *agent* of the defendant, and the county court erred in submitting it to the jury to find whether F. was said agent, or whether the defendant ratified his act.

If one acts for and in behalf of another, it is immaterial to the question of agency, so far as third persons are concerned, whether he acts by his direction and request, or by his permission merely; he is equally his agent in both cases.

CASE for false warranty of a horse. Plea, the general issue, and trial by jury, May term, 1869, BARRETT, J., presiding.

On trial, the plaintiffs claimed, and gave evidence tending to prove, that they purchased the horse in question of one John Fuller, in exchange for a certain white-faced mare and $137.50, for which they gave their note, payable to defendant; that said Fuller, in making the trade, was acting as the agent of the defendant, who was the owner of the horse; that Fuller warranted the horse, and that the horse was not in fact as warranted, and that thereby his value was diminished.

The defendant insisted that Fuller did not sell the horse to the plaintiffs as his agent; and he testified that he received the horse from the father of Fuller, at the price of $175, in part payment of a debt; that he had no use for the horse; that he let Fuller take the horse to keep and work for his board; that he said to Fuller that he had no use for the horse; that if he could have the $175 that he paid for him, he would be glad of it; that Fuller said he thought he could get more; that something was said about the white-faced mare; that he, defendant, told Fuller that he had driven her, and told him what he would allow for her, and that Fuller was to have all he could get over $175. Fuller testified that the defendant said to him, in the summer previous

4

to the trade with plaintiffs, that if he, Fuller, would pay to the defendant $175, he might take the horse and do what he pleased with him, and that defendant did finally get $175 for the horse. It appeared that in addition to the note for $137.50, executed by plaintiffs, defendant took Fuller's note for $37.50, and Fuller kept the white-faced mare.

After having told the jury that the defendant would be bound by Fuller's representations, if he authorized him as his agent, and on his account, to sell or otherwise dispose of the horse, or if, after the trade had been made, he adopted and ratified it as made on his own account, the court instructed the jury that if they should find that the defendant, in letting Fuller have the horse to keep and use, as his testimony tended to show, gave him permission, on condition that he would pay the defendant $175 — the amount which he had allowed for the horse to Fuller's father — to dispose of or do what he had a mind to with the horse, on his, Fuller's, account and for his benefit, and did not direct or request Fuller to sell or dispose of it *for him, or as his agent;* and Fuller, acting on his own motion, under such permission, sold it to the plaintiffs on his own account, the defendant would not be bound by Fuller's representations — he would not be acting as the defendant's agent ; that the distinction was between direction or request by the defendant on the one hand, which would constitute agency in Fuller, and mere permission by the defendant, without direction or request, on the other.    To the instruction thus given, and to nothing else, the plaintiffs excepted.

The Jury rendered a verdict for the defendant.

*Julius Converse* and *W. E. Johnson*, for the plaintiffs.

*Norman Paul*, for the defendant.

The opinion of the court was delivered by

PECK, J.    The plaintiffs claim to recover of the defendant for a false warranty of the horse which they received for the white-faced mare and their note for $137.50 payable to the defendant. The exception is to the charge of the court in relation to whether Fuller, in negotiating the trade, acted as the agent of the defendant, or in his own behalf.

The view most favorable to the defendant that can be taken of the evidence disclosed in the case, is, that the defendant authorized

Fuller to dispose of his, (the defendant's,) horse, and have all he could get for it over $175 ; at the same time telling Fuller he would take the white-faced mare owned by the plaintiffs at $45 ; and that subsequently Fuller, in pursuance of that authority, did dispose of the horse to the plaintiffs, for the white-faced mare and the plaintiffs' note of $137.50, provided the defendant would take the note, or as some of the testimony was, provided the defendant would consent to the contract, and that Fuller and the plaintiffs thereupon went to the defendant and informed him of the terms of the contract, and to which the defendant consented and agreed, and then did take the plaintiffs' note for the $137.50 payable to himself. This is as favorable a view for the defendant of the facts in relation to the agency of Fuller as even the testimony on the part of the defense will warrant, while the testimony on the part of the plaintiffs is less favorable to the defendant. It is evident from this that, at the time of the trade with the plaintiffs, the horse was the property of the defendant ; the avails of the trade thereby became his, the trade was his, and the liability, if any, is his. It is clear that no title to the horse passed from the plaintiffs to Fuller, and equally clear that the consideration received from the plaintiffs, not only the note, but the white-faced mare, by the trade became and were the property of the defendant. True, Fuller was to have all he could get over $175, which would give him a claim on the defendant for $7.50, as the defendant took the note and was to take the white-faced mare at $45. The exceptions state that in addition to the note for $137.50, executed by the plaintiffs, the defendant took Fuller's note for $37.50, and Fuller kept the white-faced mare, but it is not stated in the bill of exceptions when this arrangement was made, by which Fuller was to have the mare and give his note. But the minutes of testimony, taken by Mr. Washburn and by Mr. Converse, bearing on this subject of agency, are referred to as part of the case, which have been furnished us ; and by which it appears from the defendant's own testimony, among other things, that no arrangement of that kind was made till some time after the trade was closed with the plaintiffs, but that on a subsequent occasion it was agreed, between the defendant and Fuller, that Fuller should take the white-faced mare

and give his note to defendant for $37.50, which was done accordingly. This appears more fully by Mr. Washburn's minutes of testimony, whose minutes appear to be more full than those taken by Mr. Converse. Even without that previous arrangement between defendant and Fuller, that the defendant would take the mare at $45, the property of the mare by force of the trade with the plaintiffs would have vested in the defendant; especially as the defendant assented to the trade at the time it was made. The subsequent arrangement between Fuller and the defendant, by which Fuller took the mare, could not change the legal relation of principal and agent existing at the time of the contract with the plaintiffs, so as to abridge the rights of the plaintiffs, which would otherwise result from that agency. Whether we take the evidence on the part of the defense alone, or the whole evidence on both sides, we think it will bear no other construction than that Fuller, in making the trade with the plaintiffs, was the agent of the defendant, and acted in that capacity. The court therefore erred in leaving it to the jury to find whether Fuller, in making the contract with the plaintiffs, acted in behalf of the defendant, or in his own behalf and on his own account; as upon the undisputed facts, he was acting as the agent of the defendant. On this question of agency there was also error in that part of the charge in which the court told the jury that " the distinction was between direction and request by defendant on the one hand, which would constitute agency in Fuller, and mere permission by the defendant without direction or request, on the other. " No such distinction as applicable to a question of this character is recognized. If one acts for, and in behalf of another, it is immaterial to this question of agency, so far as third persons are concerned, whether he acts by his direction and request, or by his permission merely; he is equally his agent in both cases.

In another part of the charge, the court told the jury that " the defendant would be bound by Fuller's representations, if he authorized him, as his agent and on his account, to sell or otherwise dispose of the horse ; or if after the trade had been made, he adopted and ratified it as made on his own account. " As general propositions, this part of the charge cannot be said to contain

affirmative error. But in view of the evidence in the case, and especially in connection with the other portion of the charge already commented upon, it stops short of giving the jury full and necessary information as to the legal result of the undisputed facts. In connection with the other part of the charge, it is evident that the court in this part of the charge intended to leave a question to the jury that ought to have been decided by the court; that is, whether the authority, which was indisputably shown, that the defendant gave to Fuller to dispose of his, (the defendant's,) horse, was an agency to dispose of it, "*as his agent, and on his account.*" This, as we have already seen, was a legal result of the facts not in dispute; and the court should have told the jury that the authority from the defendant to Fuller to dispose of the horse, shown in the case, was an authority in Fuller from the defendant, to dispose of the horse, "*as his agent and in his behalf,*" instead of leaving the legal character and consequence of that authority to be decided by the jury. The same is true as to the charge that the defendant would be bound, "if after the trade had been made he adopted and ratified it *as made on his own account.*" The defendant, knowing what the contract was, assented to it and took the benefit of it. That was in law a ratification of the contract, and left no question of fact open as to whether he ratified it, *as made on his own account.* Upon the facts not in dispute, the defendant adopted and ratified the contract, and that adoption and ratification made it his own as matter of law, and the jury ought to have been so told. In the face of the facts in the case the defendant has no right to say that, although he ratified the contract, he did not ratify it as his own contract; the law makes it his.

Judgment reversed, and new trial granted.