IRVING N. CHASE v. GLENN ROBINSON.

May Term, 1912.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed October 21, 1912.

*Animals—Care and Training of Horses—Lien at Common Law and Under P. S. 2658—Principal and Agent—Authority of Agent—Principal Estopped to Deny Liability—Election of Remedies.*

In assumpsit to recover for keeping and training a horse, it appeared that defendant's father, with her consent, committed the horse to plaintiff's care; that plaintiff supposed the father was the owner, relied exclusively on his credit, and made his charges wholly against him, but kept the account separate from charges against him relating to other horses, and looked to this horse as being good for its keeping; that plaintiff sued the father for the account, when plaintiff was informed of the true ownership, and thereupon brought this suit, attaching the horse as defendant's property. *Held*, that plaintiff did not relinquish any lien that he had on the horse.

While the common law does not give a mere agister of animals a lien thereon for their keeping, it gives a trainer of horses a lien for their training on horses committed to him therefor, and P. S. 2658 gives any person a lien for the keeping of a horse placed in his care with the consent of the owner, and so plaintiff, a trainer of horses, has a lien on a horse, still in his possession, for its keeping and training during a period for which the horse was committed to him for that purpose with the consent of the owner, and for its keeping without training during a period immediately subsequent.

The authority of an agent is, *prima facie*, coextensive with the business entrusted to his care, and so in determining the nature and extent of an agency regard may, and often must, be had to the character of that business, and the law applicable thereto.

The mere facts that an agent purports to act for himself without disclosing his principal, and acts by permission of his principal rather

than by express direction, do not narrow the agency nor relieve the principal from liability.

Where defendant, a woman 25 years old, owned a horse that, with her consent,· was by her father committed to plaintiff for care and training, and plaintiff was by the father led to believe that he was the owner, to agree with him as to the care and training, and to rely exclusively on his credit, and plaintiff knew of that deception, or at least permitted it, she is estopped to deny that her credit as the real owner was pledged.

Where plaintiff, when he sued defendant's father to recover for the care and training of a horse belonging to defendant, had no knowledge that she was the owner, plaintiff was not precluded from thereafter maintaining a suit against defendant to recover for the same services.

GENERAL ASSUMPSIT. Plea, the general issue. Trial by jury at the September Term, 1911, Rutland County, *Miles*, J., presiding. Verdict directed for the defendant, and judgment thereon. The plaintiff excepted. The opinion states the case.

*W. A. Atwell* for the plaintiff.

*Robert W. Simonds* and *J. Rolf Searles* for the defendant.

HASELTON, J. This is an action of assumpsit in the common counts. The case was tried by jury. At the close of the plaintiff's evidence a verdict was directed for the defendant. On the verdict returned as directed judgment was rendered. The plaintiff excepted to the direction of a verdict against him and to the rendering of judgment thereon.

Facts which the evidence reasonably tended to show were as follows: The defendant for about seven years was the owner of a horse called "Red Glen." She became its owner when it was a colt. She lived in her father's family in St. Johnsbury, and her father made the arrangements for keeping the colt. For a time it was kept in Barton under an arrangement made by her father with her consent and approval. While there it was trained, as well as kept, by one Lang with the knowledge and approval of the defendant. She never paid, or was called on to

pay, anything on account of this keeping and training. She supposed her father paid.

Mr. Chase, the plaintiff, lived in Brandon on a farm and kept horses there, having a training stable in connection with his farm. In June, 1909, Mr. Chase had quite an extensive "horse sale," which was advertised. Among the horses sent to the plaintiff for the sale was "Red Glen," the horse in question, which was sent from Barton to Brandon. The defendant's father took the horse there with the knowledge of the defendant. She knew that her father was looking after the horse for her.

Her father claimed to be its owner, in his dealing with Mr. Chase, although at one time the father, representing that he owed a person at St. Johnsbury, asked Mr. Chase to say that the defendant was the owner. The horse not being sold as was anticipated, the father, Mr. Robinson, made an agreement with Mr. Chase by which the latter was to keep and train the horse during the summer for a dollar a day. The horse was kept and trained by Mr. Chase under this arrangement until about November 1. Thereafter until June 1, 1910, the horse was kept and cared for by Mr. Chase, but was not trained. For this keeping without training no price was agreed upon, but Mr. Chase made his charges $20 a month. In March or April, 1910, Mr. Robinson came to Brandon to work for Mr. Chase, and was furnished by the latter with a house in which Mr. Robinson and his family, including the daughter Glenn, the defendant, lived until sometime in July, 1910, when the Robinsons moved away. A month or two before that time Mr. Chase and Mr. Robinson had arranged that the former should continue to keep the horse but should work it enough to pay for its keeping. When the Robinsons moved away the horse was left with Mr. Chase.

Before leaving Brandon the daughter gave a mortgage on the horse without any consideration moving to her. But Mr. Chase was not apprised of this fact. In the fall of 1910, he tried to get his pay of Mr. Robinson for the training and keeping charged for, and brought a suit against Robinson, when he was informed of the real ownership of the horse. Thereupon he brought this suit against Miss Robinson and attached the horse in the suit as her property.

Miss Robinson, the defendant, testified that she knew that her father was going to take her horse to Brandon to be sold, that

she knew that it wasn't sold, and that after the sale she knew that it was to be kept there, that her father told her .from time to time what arrangements he had made for the horse, and that she approved of them.

Mr. Chase testified, in one place, that he had an account against the horse, and in another place that he made his charges to Mr: Robinson and relied entirely upon the credit of Mr. Robinson and knew no one else in the transaction, but that, while he had an account with Mr. Robinson relating to other horses and other dealings, he kept the account in relation to this horse separate, and that while, in giving credit, he didn't look to any other person than Mr. Robinson, he did look to the horse as being good for its keeping. His account books were used in the trial, but have not been furnished us.

The fair inference from all his testimony is that he gave credit to Mr. Robinson as the owner of the horse, but that he did not relinquish such security by way of a lien as he might have. Our statutes gave him a lien upon the horse if it was placed in his care with the consent of the owner, P. S. 2658, and there was evidence, some of which we have referred to, which tended to show such consent on the part of the owner, the defendant. Besides, while it became settled at common law that a mere agister of animals did not have a lien for their keeping, it was recognized that a trainer of horses had a lien for the training of horses put into his hands for training. *Forth* v. *Simpson,* 13 Q. B. 680; *Bevan* v. *Waters,* 3 C. & P. 520; *Harris* v. *Woodruff,* 124 Mass. 205, 26 Am. Rep. 658; *Note to McIntyre* v. *Carver,* 37 Am. Dec. 522; See *Wills* v. *Barrister,* 36. Vt. 220, 225.

We need not dwell upon the matter of a lien, for this is not a proceeding directly to enforce such security; but it is an action of assumpsit against the owner of the horse, and the question of a lien bears upon the extent of the agency of Mr. Robinson in behalf of his daughter, for in determining the nature and extent of an agency regard may, and oftentimes must, be had to the character of the business under consideration and to the laws applicable thereto. *Insurance Co.* v. *Wilkinson,* 13 Wall. 222, 20 L. Ed. 617.

The defendant is a young lady twenty-five years of age, and she appears to have acquired the ownership of this horse at a time nearly coincident with her arrival at the age of majority.

Her whole testimony tends to show that from first to last her father, with her permission and approval, cared for and managed the horse as fully as if it had been his own; that, however, she saw it from time to time enough to know it; that she and her father shared the purpose of having the horse trained to develop its speed; that though in the first instance it was taken to Mr. Chase to be sold, its subsequent keeping and training by him were with the knowledge and approval of the defendant.

There was evidence tending to show that, if the horse was not sold at the Brandon sale, the defendant expected that her father would take it to Boston and sell it there, and that when he left it with Mr. Chase, as he did, with her knowledge and acquiescence, it was agreed by her father and Mr. Chase that the latter should sell it if he got a chance, and since she testified that her father told her from time to time of his arrangements with Mr. Chase, the evidence tended to show that her father's authority to sell without restrictions as to price was recognized by her. All this evidence tends to show an agency on her father's part broad enough to make her liable for the keeping and training of the horse, unless the arrangements actually made by her father were inconsistent with liability on her part.

It is a well recognized rule that the "powers of an agent are *prima facie* coextensive with the business intrusted to his care." *Frost* v. *North British &c. Ins. Co.*, 77 Vt. 407, 60 Atl. 803; *Holdridge* v. *Holdridge*, 53 Vt. 546; *Kingsley* v. *Fitts*, 51 Vt. 414; *Linsley* v. *Lovely*, 26 Vt. 123; *Davis* v. *Waterman*, 10 Vt. 526, 33 Am. Dec. 216.

Here the defendant was an undisclosed and concealed principal, but this fact did not of itself narrow the agency nor relieve the principal from liability, nor did the fact that the agent acted by permission rather than by express directions. The absence of express directions here rather tends to show a plenary agency with reference to this horse. *Fay* v. *Richmond*, 43 Vt. 25; *Coverly* v. *Braynard*, 28 Vt. 736; *Carney* v. *Dennison*, 15 Vt. 400; *Cross* v. *Haskins*, 13 Vt. 536.

We have referred to the possible effect of the agreement between Mr. Robinson and Mr. Chase. The defendant's testimony tended to show that her father informed her of his transactions with Mr. Chase about the horse, and so inferentially of his deception with regard to the ownership, although when directly

questioned upon the point she said that she didn't know whether her father had told Mr. Chase the truth about the ownership or not, and although she finally said that she had no knowledge that her father had made any misrepresentations. It is true that, while what was done by her father with her consent operated to pledge the credit of her property, the agreement did not in terms pledge her personal credit. But the agreement pledged the credit of Mr. Robinson as the owner of the horse, and if, as some evidence tended to show, the defendant as the real owner knew of this deception and permitted it, she cannot be heard to say that her credit as the real owner was not pledged.

The suit brought by Chase against the defendant's father does not preclude him from maintaining this suit, for the evidence tended to show that when the former suit was brought he had not such knowledge of the facts as was necessary to make his course an election to treat the agent and not the principal as his debtor. *Daggett* v. *Champlain Mfg. Co.,* 71 Vt. 370, 45 Atl. 755.

There was evidence fairly and reasonably tending to show that the defendant was liable to the plaintiff in this action, and the question of her liability should have been submitted to the jury under proper instructions.

*Judgment reversed and cause remanded.*