## PITTSBURGH TERMINAL COAL CORPORATION v. BENNETT.

### No. 5240.

Circuit Court of Appeals, Third Circuit.

Sept. 28, 1934.

For former opinion, see 70 F.(2d) 65.

C. Russell Phillips, of Philadelphia, Pa., C. F. Taplin, of Cleveland, Ohio, Sidney J. Watts, of Pittsburgh, Pa., and Robert T. McCracken, of Philadelphia, Pa., for appellant.

Grover C. Ladner, of Philadelphia, Pa., and Harvey A. Miller and Miller & Nesbitt, all of Pittsburgh, Pa., for appellee.

Before WOOLLEY, DAVIS, and THOMPSON, Circuit Judges.

DAVIS, Circuit Judge.

This case was here on a former appeal from a judgment entered on a verdict directed by the District Court. We reversed the judgment and awarded a new trial. On the new trial, the jury rendered a verdict for

the plaintiff, and the defendant appealed. We affirmed the judgment. The defendant filed a petition for reargument, which was allowed, and the case is here on the reargument for a new trial.

On July 4, 1934, the plaintiff was killed in an automobile collision, and his sister, Martha Williams Bennett, has been substituted as plaintiff-appellee.

In support of its petition, the defendant says that the court below did not consider on the first trial, and refused to consider on the second trial the questions as to: (1) Whether or not the fact that the contract was under seal should make any difference in the result; (2) whether or not there had been an election of remedies by the plaintiff; and (3) whether or not plaintiff had failed to perform.

The trial court on the second trial submitted to the jury for its determination the following questions:

"(a) Was the appellant, the Pittsburgh Terminal Corporation, Hoffacker's undisclosed principal?

"(b) Was the appellee's claim barred by the Statute of Limitations?

"(c) Did the appellant, the Pittsburgh Terminal Coal Corporation, breach the contract of October 11th, 1924?

"(d) The court then instructed the jury, in the event the three preceding questions, as here stated, were answered in favor of appellee, then what were the damages resulting from the breach of the contract?"

The jury found the first three questions in favor of the appellee, and, under the evidence and the charge of the court, these findings settled these questions unless, as a matter of law, they are disturbed by the answers to be given to one or more of the three questions urged in this reargument which the court refused to consider in the second trial.

1. As to whether or not the fact that the contract was under seal makes any difference in the result, the appellant says that "one not a named party to a sealed instrument cannot be sued upon it in the federal courts."

The tendency of courts generally is to relax the rigor of common-law and technical rules because they are a bar in many cases to the administration of substantial justice, and in the case of seals the need for them has largely disappeared in modern times when public schools and even colleges are open to almost every one who really desires an education.

The lands over which the contract in question arose lie in the state of West Virginia. There the distinction between contracts under seal and not under seal has by statute been abolished (chapter 36, article 3, § 1 [§ 3555] Annotated Code of 1932; Donahue v. Rafferty, 82 W. Va. 535, 96 S. E. 935), and there an undisclosed principal may be sued on an instrument under seal. In the case of Hill v. Gratigny Plateau Development Corporation (C. C. A.) 52 F.(2d) 142, it was held that in the sale of real estate the law of the state where the land lies controls, and, if that principle is to be applied in this case, the question of the seal must be determined in accordance with the law of West Virginia, where an undisclosed principal may be sued on an instrument under seal.

But, if the law of Pennsylvania, where the suit was brought, controls, the same result must be reached in this case.

In Pennsylvania, all deeds or instruments for conveying or releasing lands made by any natural person, either in his individual capacity or as fiduciary, are valid without a seal, and have the same force and effect as if a seal were present. Title 21, PS Pa. § 10.

In the case of Lancaster v. Knickerbocker Ice Co., 153 Pa. 427, 26 A. 251, 252, the court said:

"It is text-book law, applied and enforced in a long and unbroken line of cases, that where a simple contract, other than a bill or note, is made by an agent in his own name, his undisclosed principal may maintain an action or be sued upon it. 2 Evans, Prin. & Ag. pp. 468, 469; 1 Amer. & Eng. Enc. Law, p. 392, and cases cited. It is also well settled that an unauthorized and unnecessary addition of a seal to such contract may be treated as surplusage. Deckard v. Case, 5 Watts 22 [30 Am. Dec. 287]; Hennessey v. The Western Bank, 6 Watts & S. 300 [40 Am. Dec. 560]; Dubois' Appeal, 38 Pa. 231 [80 Am. Dec. 478]; Jones v. Horner, 60 Pa. 214; Schmertz v. Shreeve, 62 Pa. 457 [1 Am. Rep. 439]; Cook v. Gray, 133 Mass. 106; Blanchard v. Blackstone, 102 Mass. 343; Purviance v. Sutherland, 2 Ohio St. 478."

"A seal in this state [Pennsylvania] has no solemnity of form, being made by the mere gyration of a pen, and often affixed by persons ignorant of its legal effect." Jones v. Horner, 60 Pa. 214, 218.

In the case of Ottman et al. v. Nixon-Nirdlinger et al., 301 Pa. 234, 151 A. 879,

880, the court said: "It is admitted that, if the writing in question was a simple contract, though under seal, an action would lie against the undisclosed principals of the assignee (Lancaster v. Knickerbocker Ice Co., 153 Pa. 427, 26 A. 251). * * * Though a seal retains in part its common-law force in limiting a right of action (Greene County v. Southern Surety Co., 292 Pa. 304, 141 A. 27), yet this is not true where its use is mere surplusage (Dick v. McWilliams, 291 Pa. 165, 139 A. 745; Swisshelm v. Swissvale Laundry Co., 95 Pa. 367), or, where added, it appears from the writing itself the one signing acts for another (Yentis v. Mills, 299 Pa. 25, 148 A. 909)."

Accordingly, if the contract on which this suit is based is an instrument for conveying or releasing lands, or is a simple contract, the addition of the seal was mere surplusage and has no force and effect.

Again, while a seal in Pennsylvania retains in part its common-law force in limiting a right of action, it appears in the contract in this case that Hoffacker, who signed it, was acting as agent for another, and the seal was therefore without effect.

Accordingly, the presence of the seal does not constitute a defense, and the undisclosed principal could be sued on the instrument just as though it did not have a seal.

■■ 2. The second question urged by the appellant as to why a new trial should be awarded is that the appellee had made an election of remedies; that he had sued Hoffacker, the agent, and entered judgment against him in West Virginia, rather than his undisclosed principal, the appellant here, and this barred his right to sue the appellant.

It is a general rule of law which is well settled by a long line of decisions that, if a person contracts with an agent of an undisclosed principal, upon discovery of the principal, he has a right of action against the agent and a corresponding right against the principal. He may elect to proceed against either, but he may not proceed against both. If he elects to proceed against the agent after he discovers the identity of the principal, he may not thereafter proceed against the principal. If judgment is taken against either with full knowledge of all the facts, no claim thereafter may be asserted against the other, even though the judgment is unsatisfied. Williston on Contracts, vol. 1, § 289; Barrell v. Newby, 127 F. 656 (C. C. A. 7); Johnson & Higgins v. Charles F. Garrigues Co., 30 F. (2d) 251 (C. C. A. 2).

Appellant says that the identity of the principal became known to the plaintiff shortly after April 13, 1928, that with this knowledge he entered judgment against the agent in his suit in West Virginia on April 28, 1928, and that thereafter recovery against the appellant was barred.

■■ It is true that plaintiff entered judgment against Hoffacker in the circuit court of Ohio county, W. Va., on April 28, 1928, but suit was begun more than two years before. In January, 1926, he brought suit against Hoffacker and Clarence E. Tuttle, president of the defendant company, for the balance of the purchase price. On this suit plaintiff took a voluntary nonsuit, and later brought suit against Hoffacker alone in the same court on the same cause of action. But, before he brought this suit, he searched the records and found that the property still stood in the name of Hoffacker. The jury rendered a verdict in his favor for $25,000 on October 14, 1927. It was on this verdict that judgment was entered on April 28, 1928. Just before the entry of judgment, on April 13, 1928, defendant recorded the deeds conveying the property from Hoffacker to the defendant. "Shortly" after the deeds were recorded, the plaintiff learned that Hoffacker had conveyed the coal to the defendant by deeds dated in December, 1924, and in January, 1925. Exactly what is meant by "shortly" is not made clear. Plaintiff did not know that defendant was the undisclosed principal until after April 13, 1928, but, whether he learned of it before or after April 28, 1928, the record does not disclose. But we think this is immaterial under the facts in this case. The defendant had concealed that it was Hoffacker's undisclosed principal until just before the entry of the judgment against him. This suit had long before been begun against the agent. There was no opportunity then to elect. If the plaintiff discovered that the defendant was the principal after April 13, 1928, but before he entered judgment against the agent on April 28, 1928, the discovery came after he had fought and won the case, and nothing remained to be done except enter the judgment, which would have attached to the coal then standing in the name of the agent, if the defendant had not hurriedly recorded the deeds. Under these circumstances, the rule of election as stated above does not apply. The plaintiff had never had an opportunity to elect. Election involves a choice, and choice presupposes knowledge of alternatives and freedom and opportunity to choose between them. Election cannot be made between

principal and agent until the principal is known, and here it was not known. Suddenly or unexpectedly discovering the principal (who, it is alleged, secretly defended the suit, but at the same time denied that it was the principal), the plaintiff was entitled to enter his judgment, keep what he had (which as a matter of fact never amounted to anything), and proceed against the principal. Mechem on Agency, vol. 2, p. 1332, § 1751, says: "That the other party, having actually dealt with the agent as principal and obtained an obligation against him but finding unexpectedly that he also has a claim against the principal intends to make the most of the situation—to keep and enforce his claim against both until he has obtained satisfaction from one of them, or has done something which in fact or in law shows that he has abandoned his claim against one or the other of them."

To the same effect are: Page on Contracts, vol. 3, p. 3059, § 1776; Gavin v. Durden Coleman Lumber Co., 229 Mass. 576, 118 N. E. 897; Greenburg v. Palmieri, 71 N. J. Law, 83, 58 A. 297; Lindquist v. Dickson, 98 Minn. 369, 107 N. W. 958, 6 L. R. A. (N. S.) 729, 8 Ann. Cas. 1024; Chase v. Robinson, 86 Vt. 240, 84 A. 867; Beymer v. Bonsall, 79 Pa. 298.

The doctrine of election as urged by the defendant does not constitute a defense in this case, and is in consequence immaterial.

■ 3. The third question which the defendant says entitles it to a new trial is that "the plaintiff was not able to deliver deeds for the balance of the real estate, and being himself unable to perform was in no position to demand performance of the defendant."

The plaintiff agreed to sell to Hoffacker, agent, and convey to him, his heirs and assigns, nominee or nominees, the coal underlying 2,606.23 acres of land. This land was made up of separate tracts. Payment was to be made for "each tract separately as soon as such deed and abstract is tendered therefor irrespective of the remaining tracts; purchaser to take said tracts subject to the terms of said options, and to have the benefit of any deferred payment clauses or other privileges in said options and to deal as to such deferred payments direct with the makers of said options."

It appears that the plaintiff secured options for the tracts in question and took them to the office of the defendant which treated this as a performance of and compliance with the contract.

Plaintiff said: "I went to Mr. Hoffacker's office the morning of July 6, 1925; accompanying me was Edmund L. Jones, a lawyer of Wheeling. We met Mr. Hoffacker there and told Mr. Hoffacker we had the rest of the options that were covered by the contract of October 11, 1924, and Mr. Hoffacker refused to accept the options."

The plaintiff testified that he then, in company with E. L. Jones, his attorney, and Hoffacker went to the office of Horace F. Baker, president of the defendant company at that time, and had with him a deed for a small tract known as the J. E. Smith farm and options for the balance. He said: "At the same time, practically all the rest of the coal that was covered by the contract for 1924, I had options with me, and left the options with Mr. Baker in his office, the same as I tendered the other options for the other coal. * * * I handed Mr. Baker the options for the balance of the coal lands under the contract of 1924"; that he tendered the deed to Mr. Baker, and "he said he would take no more coal and pay for no more options."

The court charged the jury as follows on this question:

"Now we come to the third question: Did the defendant breach the contract of October 11, 1924? Plaintiff contends that defendant, on July 6, 1925, refused to take any more of those options, or any more of the coal, and that it made that refusal without any qualifications whatever, just simply refused it. The defendant, on the other hand, contends it did not refuse to take that coal, but simply refused to pay any more money, stating, in effect, that the conveyance of the Paragon-Elkhorn property would cover the balance of the money which was due under the contract. Now, the question of breach is going to be determined upon whom you believe—and that is important for you. If the defendant, through Hoffacker and Baker, refused, without any qualification whatever, to take any more coal, to take any more of the options, on July 6, 1925, then the defendant did breach the contract; but, on the other hand, if they only refused to pay more money, and claimed that the payment should be made by the conveyance of the Paragon-Elkhorn property, then it did not breach the contract. So it is for you to determine whom you will believe. I will make that clear again: If the defendant on that date, or on any dates in this case, absolutely refused to take any more coal, or those options, without giving any qualification whatever, then it breached the contract; but, if it did not do so, simply stating 'We will not pay any more money to you', and, in effect, 'What we will do—we will convey the Paragon-Elk-

horn property, which we have a right to do'—then it did not breach the contract."

The question of the plaintiff's ability to perform was not raised by the defendant, nor was the question raised as to how the defendant was to pay for the balance of the coal, whether in cash or by the Paragon-Elkhorn property. The evidence tends to show that the plaintiff was able to perform the contract, and, if the plaintiff's testimony is true, the defendant assumed that the plaintiff was able to do so and did not raise that question, but simply said that "he would take no more coal and pay for no more options." If this is what took place, then there was no question raised as to plaintiff's ability to perform, and the question of ability is an afterthought. The truth of this testimony was squarely submitted to the jury, whose verdict settled the fact of plaintiff's ability and the breach. Consequently, the ability of the plaintiff to perform is not a ground for a new trial.

These three questions on which defendant relies do not constitute a defense and are not a ground for a new trial under the evidence in this case.

The petition is dismissed, and a new trial denied.