BARRELL et al. v. NEWBY.

(Circuit Court of Appeals, Seventh Circuit. January 5, 1904.)

No. 990.

1. PRINCIPAL AND AGENT—CONTRACT MADE BY AGENT FOR UNDISCLOSED PRINCIPAL—ELECTION BY THIRD PARTY.

Stockbrokers who accepted and executed an order for the sale of stocks received from another broker with knowledge that he was acting as agent for an undisclosed principal, after the transaction has been closed with a loss incurred by them to be charged to their customer, and after they have ascertained the identity of the principal, have their election to hold such principal or his agent, upon whose credit they relied in the first instance, but they are not entitled to hold both.

2. ACTION ON CONTRACT—ELECTION AS DEFENSE—DETERMINING ISSUE ON DEMURRER.

Where the answer in an action on a contract pleaded as a defense that plaintiffs had elected to hold defendant's agent, who made the contract in his own name as principal, and set out the facts relied on which in law constituted such election, the issue may be determined by the court on a demurrer to the answer.

3. SAME—ELECTION AS BETWEEN PRINCIPAL AND AGENT—ACTS CONSTITUTING.

Where plaintiffs, having made a contract with one known to be acting as agent for an undisclosed principal, after knowledge of the identity of the principal brought two actions against the agent on the contract, in each of which they procured attachments and garnished persons who owed money to the agent, which actions are still pending, in the absence of mistake or fraud their action constituted an election to hold the agent, which precludes them from maintaining an action against the principal.

4. SAME—DEFENSES—ELECTION OF DEFENDANT.

A defendant who pleads as a defense to an action on a contract that plaintiff has released him from liability by electing to proceed against another need not show that it would be inequitable to permit plaintiff to recover, as would be required on a defense of equitable estoppel, but it is sufficient if he shows that plaintiff had the right of election and has exercised it.

In Error to the Circuit Court of the United States for the District of Indiana.

On July 17, 1901, plaintiffs in error began their action at law to recover judgment for certain moneys claimed to have been advanced by them for defendant. An answer was filed, to which a demurrer for want of facts was addressed. On the overruling of the demurrer plaintiffs declined to plead further, and the court entered the judgment to reverse which this writ of error was brought.

The complaint, in 14 paragraphs, and the answer, in 1, occupy 50 odd pages of printed record. A comparison of these pleadings with a synopsis thereof, presented in the brief of one of the parties and not questioned in the brief of the other, leads us to adopt the summary as complete and accurate.

"The complaint, in its several paragraphs, in one form or another, avers the following substantive facts:

"First. That the plaintiffs were stockbrokers, engaged in the buying and selling of stocks on the New York Stock Exchange.

¶ 1. See Principal and Agent, vol. 40, Cent. Dig. § 499.

"Second. That by the usage, rules, and customs among brokers engaged in the buying and selling of stocks, when a broker has sold stocks for a customer it is the duty of such broker, within the next business day thereafter, to deliver to the purchaser a certificate of the stock so sold, and that upon such sale it becomes the duty of the customer for whom the sale was made to deliver the certificate of stock to his broker; and, if the customer fails so to do, then it is the duty of the broker to borrow such stock to make delivery for his customer, in which borrowing the broker may be compelled to pay borrowing charges, and stands bound to protect the lender against any advance in the price until the stock is returned; and that in all cases where the customer does not deliver the stock to his broker it is the customer's duty to deposit with the broker such sum or sums as may be necessary to save the broker from all harm or loss.

"Third. That on the 7th day of May, 1901, the defendant directed the plaintiffs to sell for and on his account one hundred shares of the common stock of Northern Pacific at $145 per share, and that the plaintiffs accepted said order and executed the same for the account of the defendant.

"Fourth. That the defendant did not deliver said stock to plaintiffs; that the plaintiffs borrowed such stock, and were compelled to pay the sum of $100 as borrowing charges; that said stock was borrowed to be returned on the 9th of May.

"Fifth. That the plaintiffs reported such borrowing to the defendant, and that he ratified their conduct in that behalf.

"Sixth. That on the 9th of May, 1901, the price of said stock greatly advanced, up to the sum of $1,000 per share, and that defendant, knowing such advance in price, failed, neglected, and refused to send money to the plaintiffs for their protection, and, although frequently requested so to do, failed, neglected, and refused to deliver the stock to the plaintiffs or to give them an order to purchase the same on his account, or to deposit with them moneys for their protection.

"Seventh. That thereupon the plaintiffs, in order to protect themselves from further loss, were obliged to, and they did, under and according to the usages and customs of the trade, purchase in open market on the New York Stock Exchange on account of the defendant said one hundred shares of stock at and for the price of $700 per share, thereby making a loss of $55,500, in addition to the $100 borrowing charges paid by plaintiffs, for which sums, together with the further sum of $2 paid for United States internal revenue stamps and their commission of $25, this suit was brought.

"To this complaint the defendant, after averring that all and singular the fourteen paragraphs of complaint referred to one and the same transaction, set up as a defense that the plaintiffs' claim arose out of the following facts, and not otherwise:

"First. That on and prior to the 7th of May, 1901, plaintiffs were stockbrokers, engaged in buying and selling stocks on the floor of the New York Stock Exchange, with their principal office in the city of Chicago.

"Second. That on and prior to said 7th of May, 1901, one Newton Todd was a stockbroker in the city of Indianapolis, engaged in buying and selling stocks for his customers.

"Third. That on said date this defendant ordered said Newton Todd, as such broker, to sell for him one hundred shares of the common stock of the Northern Pacific Railway Company on the New York Stock Exchange for the price of $145 per share: that he was not then the owner of such shares, but expected and intended thereafter to purchase the same at a lower price in time to close the transaction, 'which fact was well known to said Todd and to the plaintiffs.'

"Fourth. That such sale was what is familiarly known among stockbrokers as a short sale, which is executed under the usages and customs of stockbrokers in the manner following, that is to say: If the broker accepts such an order, he at once proceeds to execute the same by selling the amount of stock ordered to be sold on the floor of the New York Stock Exchange; that by the established rules, customs, and usages of the brokers in dealings on said New York Stock Exchange; stocks so sold, in the absence of an express agreement to the contrary, must be delivered on or before the hour of 2:15

o'clock on the next succeeding business day; that after the broker has thus sold said stock it then becomes his duty to borrow the number of shares of the stock so sold for the benefit of his customer, and to deliver the same to the purchaser under such sale; that it is the further duty of such broker to keep such stock borrowed until such time as the customer shall see fit to purchase and furnish such broker with the stock, to be delivered to the person from whom he has borrowed the same, unless such broker shall find it impossible to continue the borrowing of such stock, and gives his customer notice thereof; but such duty on the part of the broker is always conditioned upon the fact that the customer shall, upon reasonable notice and demand, from time to time deposit such sum or sums of money with such broker as will fully protect him from all danger of loss or harm by reason of the increase in the market price of said stocks on said New York Stock Exchange.

"Fifth. That at the time of giving such order, and at all times thereafter, the defendant had in the hands of said Todd moneys and other securities which afforded him ample protection in the execution of such order, in the borrowing of such stocks, and in carrying them.

"Sixth. That thereupon said Todd accepted said order, and in his own name, according to the established usage and customs among brokers; ordered the plaintiffs to sell said one hundred shares of stock on the New York Stock Exchange at $145 per share, he not then owning said stock, but expecting to buy the same at a lower price in time to close the transaction, as was well known to the plaintiffs.

"Seventh. That the plaintiffs accepted said order, executed the same, borrowed the stock, and paid $100 borrowing charges.

"Eighth. That thereafter, by reason of the rapid advance in the price of the stocks, the plaintiffs were required to advance and pay, and did advance and pay, in the purchase of said stock, for the purpose of delivering the same to the person from whom they had borrowed it, the sum of $55,500 over and above the amount received by them on such short sale, and the further sum of $2 for revenue stamps, and that for their services they were entitled to a commission of $25.

"Ninth. That it is the universal rule, custom, and usage among brokers dealing with each other, in the first instance to look to the other broker engaged in the transaction for the performance thereof and for their damages in event of nonperformance.

"Tenth. That on the 10th day of May Todd informed the plaintiffs that he had acted as broker for the defendant in the transaction.

"Eleventh. That after Todd had thus informed the plaintiffs, and after the plaintiffs well knew that Todd, in ordering the sale of such stock, was acting as agent for the defendant:

"(a) Plaintiffs brought their action at law against Todd in the superior court of Cook county, in the state of Illinois, for the identical sums of money recovery whereof is sought in this action, and garnished an indebtedness of $400 from the First National Bank of Chicago to said Todd, and have ever since continued in the prosecution of said action, and yet continue to prosecute the same; and that the writ of garnishment issued thereon yet remains in full force and effect, and by reason thereof said bank is prevented and restrained from paying said moneys to said Todd, though demanded by him.

"(b) That thereafter, on the 18th day of May, plaintiffs instituted another action at law in the Supreme Court of New York for the recovery of the same identical sums of money, recovery whereof is sought in this action, and on said date, and again in the month of September of the same year, caused writs of attachment and garnishment to issue in said cause, and to be levied upon an indebtedness of C. I. Hudson & Co., of the city of New York, to said Todd, for the sum of $3,100, by reason of which said C. I. Hudson & Co. were enjoined and restrained from paying the same to said Todd, although payment thereof was demanded, and they would have paid the same but for the issuing and service of said writs, and the plaintiffs are yet prosecuting said action.

"(c) That on the 10th day of May, after said Todd had informed the plaintiffs that he was but broker for this defendant in the transaction, 'and with full knowledge of said fact,' they elected to apply, and did apply, on account

of their losses in said transaction, the sum of $5,734.74 then in their hands, belonging to said Newton Todd, and they have ever since retained, and do yet retain, said sum from said Newton Todd.

"And the defendant avers that by their conduct in the premises the plaintiffs elected to consider said order to sell said stock as the order of said Todd, and not of the defendant, and to look to said Todd for the amount of their claims."

Frederick R. Babcock, for plaintiffs in error.

Charles W. Smith, for defendant in error.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

BAKER, Circuit Judge (after stating the facts as above). Plaintiffs question the adequacy of the allegations of their knowledge of defendant's principalship before they took steps against Todd; but we think the answer avers their knowledge with sufficient certainty.

What were plaintiffs' rights when on May 10th, after having executed Todd's order of May 7th and incurred the loss by reason thereof, they learned that defendant was principal?

If a merchant parts with his goods to one whom he knows to be an agent, fails to require a disclosure of the principal, and charges the account to the agent, ordinarily the question might be raised whether the merchant has not deliberately chosen the agent for his debtor, and thereby precluded himself from afterwards pursuing the principal. Patapsco Ins. Co. v. Smith, 6 Har. & J. (Md.) 166, 14 Am. Dec. 268; Ins. Co. of Pa. v. Smith, 3 Whart. 520. But the ninth averment of the answer, to the effect that, though plaintiffs knew Todd was acting as an agent for an undisclosed principal, the custom of the trade authorized them to look to him in the first instance, prevents defendant from claiming that the suggested question is available here, and leaves plaintiffs in a position as advantageous as that of a merchant who sells on credit in the belief that the purchaser is acting for himself.

Plaintiffs' contention is that such a seller, on discovering the principal, is never required to elect whom he will consider his debtor; that he has concurrent rights of action against both; and that nothing short of a satisfaction by one, or at least a judgment against one (according to English cases, which seem to be based on the English rulings that a judgment against one joint tort feasor is a satisfaction as to all), will exhaust his right to pursue the other. In support of this proposition, and of collateral arguments, plaintiffs adduce many cases.[1]

On the other hand, defendant insists that such a seller, on discovering the principal, may take a reasonable time to investigate and compare the standings of principal and agent, and thereupon must choose whom he will hold as his debtor and abandon his right to choose the

[1] The following are most strongly relied on: Youghiogheny Iron Co. v. Smith, 66 Pa. 340; Conro v. Port Henry Iron Co., 12 Barb. 53; Beymer v. Bonsall, 79 Pa. 298; Maple v. Rld. Co., 40 Ohio St. 313, 48 Am. Rep. 685; Cobb v. Knapp, 71 N. Y. 348, 27 Am. Rep. 51; Knapp v. Simon, 96 N. Y. 284; American Trading Co. v. Thomas Wilson's Sons & Co. (Sup.) 74 N. Y. Supp. 718; McLean v. Sexton (Sup.) 60 N. Y. Supp. 871; Irving v. Watson, L. R., 5 Q. B. D. 414; Barker v. Garvey, 83 Ill. 184; Mattlage v. Poole, 15 Hun, 556; Baltimore, etc., Tel. Co. v. Interstate Tel. Co., 54 Fed. 50, 4 C. C. A. 184; First National Bank v. Wallis, 84 Hun, 376, 32 N. Y. Supp. 382.

other; and that he cannot hold both. And defendant cites numerous authorities as a basis for his argument.[2]

If Todd, when placing the order with plaintiffs, had informed them that he was simply acting as agent for defendant, plaintiffs could have accepted the order as defendant's, and Todd would have incurred no liability; or they could have refused to take defendant as their debtor, and have informed Todd that they would look to him, and, if Todd had made no objection, he would have been bound and defendant not; but, in dealing with the agent of a disclosed principal, they could not have held both without an agreement to that effect. It is true that plaintiffs could have declined to take the order except on the joint and several contract of Todd and defendant; but there is no pretense of such a contract, for the averment of the complaint is that they accepted and acted on defendant's order; and the bare transaction of a merchant's selling to the agent of a known principal does not establish a joint and several, or several liability of agent and principal, but evidences only one contract, one liability, one credit, one debtor, whose identity is determined by the seller's election, which he must make at the time.

Respecting election, what difference in reason does it make whether the seller ascertains the identity of the principal before he delivers the goods and extends the credit, or after delivery but before he seeks to exact payment? In the first case, we understand plaintiffs to agree that the seller must elect. In the second, the seller manifestly has passed on the credit of but a single person. If, before payment, he finds out who the principal is, it is just that he should be able to hold the agent, for the agent offered his own credit and it was accepted. It is also just that the seller should be permitted to abandon the right that he had in the first instance to pursue the agent, and to hold the principal, for the contract of purchase was in reality the principal's. When, after delivery, but before seeking to exact payment, the seller learns the identity of the principal, he has an opportunity for investigating and comparing the standings of agent and principal, just as he would have had if he had known the principal before delivery. We apprehend no rule of law that warrants the conclusion that the seller must elect in the one case and not in the other. We perceive no solid reason why the law, in behalf of the seller, who in both cases has really contemplated and contracted for a single credit only, should in the

[2] Tuthill v. Wilson, 90 N. Y. 423; Ranger v. Thalmann (Sup.) 72 N. Y. Supp. 451; Cook on Corporations (4th Ed.) § 454; Paley on Agency, pp. 246, 247; Paterson v. Gandasequi, 15 East, 62; Addison v. Gandasequi, 4 Taunton, 573; Thomas v. Davenport, 9 B. & C. 78; Ford v. Williams, 21 How. 287, 16 L. Ed. 36; Insurance Co. of Pennsylvania v. Smith, 3 Whart. 520; Patapsco Insurance Co. v. Smith et al., 6 Har. & J. (Md.) 166, 14 Am. Dec. 268; French v. Price, 24 Pick. 13; Raymond et al. v. Proprietors of Crown & Eagle Mills, 2 Metc. 319; Paige v. Stone et al., 10 Metc. 160, 43 Am. Dec. 420; Silver et al. v. Jordan et al., 136 Mass. 319; Meeker v. Claghorn, 44 N. Y. 349; Perth Amboy Man. Co, v. Condit et al., 21 N. J. Law, 659; Borcherling v. Katz, 37 N. J. Eq. 150; Elliott v. Bodine, 59 N. J. Law, 567, 36 Atl. 1038; Fowler, Extr., v. Bowery Sav. Bank, 113 N. Y. 450, 21 N. E. 172, 4 L. R. A. 145, 10 Am. St. Rep. 479; McLean v. Ficke et al. (Iowa) 62 N. W. 753; Mechem on Agency, §§ 695-698.

one case more than the other create a contract under which the agent and principal stand as joint and several, or several, obligors. The decision in Beymer v. Bonsall, 79 Pa. 298, and expressions in some other cases, to the effect that one who sells to the agent of an undisclosed principal may, on discovery of the principal, pursue either or both until he has obtained satisfaction (as though they were joint tort feasors), do not meet our approval.

Objection is made to the answer on the ground that the issue of election or no election is one that must be determined by the jury from the evidence and the instructions of the court. If it were permissible for a defendant to tender the issue by the naked averment that plaintiff elected to hold the contract as the agent's, and if, under such an answer, the uncontradicted evidence established acts of the plaintiff from which but one conclusion could legally be deduced, then the court would have the right to direct the verdict; and, if the same acts be set forth in an answer and confessed, we think the court may likewise draw the conclusion.[3]

Do plaintiffs' acts constitute an election? In two instances plaintiffs procured conditional executions in advance on their solemn declaration to the courts that the broken contract was Todd's—not Todd's and the defendant's, but Todd's. In another instance plaintiffs acted as court and sheriff, and turned Todd's money into their own till. Now they declare with equal solemnity that the same broken contract was defendant's—not defendant's and Todd's, but defendant's. We do not mean to assert that the mere bringing of an action against Todd would be inconsistent with their proceeding later against defendant. If the action were begun before they learned of defendant's principalship, certainly they should be permitted to dismiss, and sue defendant. And if they proceeded against Todd by reason of mistake or fraud or the like, they might seek relief from their act, give up the chase they had entered upon, and return to the cross-roads. But here, under no misapprehension of comparative standings, but with full knowledge of the whole truth of the situation, plaintiffs not merely seized Todd's money on the basis that the contract was his, but they insist upon their right to retain it, and to say that the contract is Todd's, throughout the time in which they assert that the contract is defendant's. To our minds but one interpretation can be given to this conduct.

Plaintiffs urge that, inasmuch as the answer fails to aver that defendant settled with Todd before they sued defendant, it would be no hardship to require defendant to pay them. It seems to us that plaintiffs are confusing election with equitable estoppel. Election, whether of remedies or of defendants,[4] has no regard to the situation of the defendant, but is founded on a public policy that forbids a plaintiff to

[3] See Emery's Sons v. Traders' Bank (Ky.) 6 S. W. 582; Curtis v. Williamson, L. R. 10 Q. B. 57; Sessions v. Block, 40 Mo. App. 569; Kingsley v. Davis, 104 Mass. 178; Bauman v. Jaffray (Tex. Civ. App.) 26 S. W. 260; Booth v. Barron (Sup.) 51 N. Y. Supp. 391; Stuart v. Hayden, 72 Fed. 402, 18 C. C. A. 618; Silver v. Jordan, 136 Mass. 319.

[4] Fowler v. Bowery Savings Bank, 113 N. Y. 450, 21 N. E. 172, 4 L. R. A. 145, 10 Am. St. Rep. 479; McLean v. Ficke (Iowa) 62 N. W. 753; Beach v. Ficke, Id.; Terry v. Munger (Sup.) 2 N. Y. Supp. 348.

trifle with the courts. Equitable estoppel, on the other hand, grows out of a consideration of the defendant's state. They are distinct defenses, and he who pleads election need not show that it would be inequitable to permit the plaintiff to recover; it is enough if he shows that the plaintiff, having by law the right to take either of two courses, has taken and holds to the one that leads away from him.

The judgment is affirmed.