## THE JUNGSHOVED.

### J. ARON & CO., Inc., et al. v. DAMPSKIBS SELSK DANNEBROG et al.

(Circuit Court of Appeals, Second Circuit. May 7, 1923.)

No. 273.

1. **Shipping** ⊂⟹58(2)—**Sinking of lighter in smooth water and calm weather, with less than full load, is presumptive evidence of unseaworthiness.**

    The sinking of a lighter in smooth water and calm weather, under less than the load for which her size fitted her, raises a presumption of unseaworthiness.

2. **Shipping** ⊂⟹42—**Implied warranty of seaworthiness attaches to lighter hired for storage purposes in harbor.**

    The hiring of a lighter for storage of cargo in a harbor, pending its landing, carries the implied warranty of seaworthiness for the purposes of the hiring.

3. **Principal and agent** ⊂⟹145(4)—**Agent and undisclosed principal cannot be joined in suit for breach of contract made by agent.**

    An agent, who makes a contract without disclosing his agency and the identity of his principal, and the principal, when discovered, may either be held liable for breach of the contract; but the other party is put to his election, and cannot maintain a suit against both.

4. **Shipping** ⊂⟹22—**Broker held not personally bound by an implied warranty of seaworthiness of lighter let by him.**

    On evidence showing that a respondent, known to be a broker, in furnishing a lighter for harbor use on oral request, disclosed the fact of his agency and the identity of the owner of the lighter, such respondent *held* not personally bound by an implied warranty of seaworthiness.

    Mayer, Circuit Judge, dissenting in part.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by J. Aron & Co., Inc., and others, against the steamship Jungshoved, the Dampskibs Selsk Dannebrog, claimant, with the M. P. Smith & Sons Company, the C. F. Harms Company, and Alice V. Croasdale, impleaded. From the decree, the Harms Company and Alice V. Croasdale appeal. Modified.

For opinion below, see 272 Fed. 122.

The Jungshoved, with a valuable cargo, arrived in the port of New York to the care of Funch Edye & Co., a concern which for the steamship owners has defended this case and others like it. The wharf available for the steamship was so crowded with goods that it was necessary to obtain lighters for storage; i. e., to put cargo ex the steamer on lighters to await clearance of wharf. The unloading of the Jungshoved in this manner was in charge of one Fleet, an employee of Funch Edye & Co. and a man of much waterside experience for many years. In order to store certain coffee ex Jungshoved, Fleet first obtained two lighters, which were found to have insufficient capacity for all the coffee to be thus stored afloat. Therefore the lighter Crown, belonging to one Croasdale, was obtained by or for Fleet's use, who put cargo on board her, discharging by Smith & Sons as stevedores.

⊂⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

While lying in the slip and before receiving her apparent full load, the Crown sank, to the destruction of the coffee already on board. This suit was brought against the steamer to recover for failure to deliver the coffee. Liability on the part of the steamer has been admitted; the contest arises from proceedings under the former fifty-ninth rule, in which the claimants brought in the Crown in rem, her owner Croasdale in personam, as well as Smith & Sons, the stevedores, and the Harms Company, the brokers through whom Funch Edye & Co. had obtained the Crown. It was admitted before the close of trial below that no responsibility was established as to Smith & Sons, and they may be dismissed from consideration.

The questions litigated at trial and on this appeal are whether the recovery to which the libelant cargo owners are confessedly entitled shall be paid out of the proceeds of the Crown and/or the pocket of her owners, and also by Harms Company. The material allegations of the petition which brought in Croasdale and Harms are (in respect of Croasdale) that respondent was liable for having furnished an unseaworthy lighter, and (in respect of Harms) that "in chartering the lighter Crown (the claimant) used reasonable care to secure a seaworthy barge with a competent captain, and said Harms Company warranted the said barge to be tight, staunch, strong, and in all respects seaworthy," whereas the cargo loss arising from the Crown's sinking was "caused by the Crown's unseaworthiness and/or by fault and negligence in respect of its (the cargo's) loading, stowage, custody, and care while thereon, as alleged in the libel. The same was caused solely by fault or negligence on the part of Harms Company, in that it delivered the Crown to the petitioner in an unseaworthy condition and with an incompetent captain to care for her. * * *" The trial court gave decree against the steamer, Croasdale, and Harms in solido, with direction that execution issue first against Croasdale, then for any unpaid balance against Harms, and again for any unpaid balance against the steamship's stipulators. Both Harms and Croasdale appealed. The libelants and Smith & Sons submitted without argument.

Horace L. Cheney and Elliott L. Perkins, both of New York City, for Harms Co.

Pierre M. Brown and Macklin, Brown & Van Wyck, all of New York City, for Croasdale.

Burlingham, Veeder, Masten & Fearey, of New York City (Roscoe H. Hupper and Carl G. Stearns, both of New York City, of counsel), for claimant of Jungshoved.

MacFarland, Taylor & Costello and Alfred H. Strickland, all of New York City, for M. P. Smith & Sons Co.

Before HOUGH, MANTON, and MAYER, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). Considering the facts presented, it is quite impossible for Croasdale or the Crown to escape liability. Defense is made that the contract limited her load to a smaller amount than that with which she sank; i. e., that petitioners appellees overloaded her, and cannot therefore rely on that admitted implied warranty of seaworthiness which accompanied the vessel and affected her owner. As for the existence, nature, and extent of that warranty, it is enough to refer to The Sylvia, 68 Fed. 230, 232, 15 C. C. A. 362, affirmed 171 U. S. 462, 19 Sup. Ct. 7, 43 L. Ed. 241. As to the validity of the defense, we agree with the lower court that it is affirmative, and is not proven by a fair preponderance of credible testimony.

[1] It follows that the fact stands uncontradicted that the Crown was tendered as suitable to carry the load for which her size fitted her,

and under less than that load, in smooth water and calm weather, she sank; in the picturesque phrase of the water front, "she just faded away" without explanation, then or since. This raises a presumption of unseaworthiness (Dupont v. Vance, 19 How. 162, 15 L. Ed. 584; The Kathryn B. Guinan, 176 Fed. 301, 99 C. C. A. 639), which, though rebuttable, has not been met. Therefore the lighter and her owner are liable, and may be held for damages if properly sued.

[2] The ground of liability, in the absence of any evidence of negligence and after utter failure to prove incompetency in her master as alleged ut supra, is solely the implied warranty of seaworthiness, which exists whenever and wherever there is an undertaking to carry goods for hire; in a vessel and on navigable waters. The kind of carriage here contemplated was very humble; it consisted in lying still and acting as a warehouse; still it was carriage, in the sense of sustaining on the water, and that is enough.

[3] But the court below not only decreed this liability as to Croasdale and the vessel, but simultaneously held Harms, and for the same reason, viz. breach of warranty of seaworthiness. To consider this branch of the matter, it must be observed that claimant's petition under the (then) fifty-ninth rule is in effect a declaration or complaint in an action against Harms and Croasdale as jointly and severally liable to relieve petitioner from the exigency of the libel, because they and each of them warranted the Crown's seaworthiness.

Why Croasdale so warranted is plain, as above shown; but Harms was held, and held suable in this form because as broker or agent he hired out the Crown to petitioner without simultaneously divulging both his agency and the identity of his principal—i. e., Croasdale. Therefore, although the latter and the boat were liable on familiar maritime principles, Harms was also liable as agent for undisclosed principal.

Assume now that Harms did in point of fact conceal, or not fully disclose, and that liability therefore fell on him; we hold that neither on reason nor authority can such a suit be maintained, viz. an action against Harms and Croasdale together. We agree that the decisions are in great confusion as to election by a third party who has a cause of action against a discovered principal because he is principal, and against that principal's agent because the latter failed to disclose the whole of the necessary truth. The matter is well discussed in Barrell v. Newby, 127 Fed. 656, 62 C. C. A. 382.

But, whenever or however election must or may be made, it is formally and logically impossible to sue principal and agent in the manner here attempted. This is well put in Tuthill v. Wilson, 90 N. Y. 423, 428, holding that, "granting that each [i. e., agent and principal] was liable, both were not; for both could not be [liable] at one and the same time, since the contract could not be the personal contract of the agent, and yet not his contract, but that of the principal." The possibilities of suit are interestingly considered by Prof. Mechem in 23 Harv. Law Rev. 590, who shows that in the very few instances, where such illogical procedure was used, the matter passed sub silentio. Tew v. Wolfsohn, 174 N. Y. 272, 66 N. E. 934, is a case where the lower court had permitted it; but the decision above refused to view the

matter as one of principal and agent, and so avoided a finding. The dissenting opinion of Cullen, J., covers the point with his usual ability. (The discussion of the right to sue jointly in 2 C. J. 901, is misleading. Doubtless both principal and agent may be made defendants; but if there was an agency, and nothing more, the judgment can never be joint.)

It results that under any view of the law, and on the facts as alleged in the petition, the pleader should have been put to his election in limine. But on this appeal, which is a new trial, we proceed to ascertain the facts as to the hiring or procurement of the Crown.

[4] By uncontradicted evidence it appears that Harms owned a few barges, though none like the Crown, a covered lighter; but his concern was and had been for many years principally a brokerage house, claiming to be the pioneer in the trade in this harbor. That means that he acted as agent for numerous owners, hiring out their boats with their employees on board, and being paid a percentage on the hire received. For the purpose of this case the claimant of the Jungshoved is Funch Edye & Co., and that concern is Capt. Fleet. This experienced man had used the Crown a few months before, and had gotten her and many similar craft from or through Harms, whom he knew as brokers, but said, when a witness, that he did not know whether Harms Company were "brokers or charterers." This is substantially an admission that they were not ordinarily owners. When Fleet found the lighters already obtained insufficient for his purposes, he got the Crown and through Harms; but there is contradiction in the evidence as to the exact method. He says he telephoned his head office to get another boat, and a clerk in that office says he telephoned Harms on receipt of Fleet's demand to "send another lighter over," evidently assuming that Harms' man would know what "over" meant— i. e., to the wharf where Jungshoved lay. Harms' clerk, who undoubtedly got this message from some one, says he talked with Fleet, and said in reply to the request that he could and would send over "Croasdale's barge," identifying her as the one Fleet had had before.

Undoubtedly there was some fairly hard swearing in the court below, both in asserting and denying Croasdale's defense of a contract for special loading; but we can see no reason for rejecting or neglecting the foregoing plain, simple, everyday story of the oral hiring of a small lighter on a busy day in a crowded harbor. Everything was oral, and everything usual; we believe the usual story, as above told. Result is that petitioner asserted a plea untrue, and knew before the Crown started for the steamer's side that Harms, a broker, on being asked to send over a lighter, had agreed to send over Croasdale's lighter, which Fleet had used some months previously.

Assuming, now, two points: First, that an implied warranty of seaworthiness can be read into or annexed to the liability of an agent, who is responsible only because of lack of disclosure, and, second, that Harms was in terms asked to let, charter or hire out the Crown—we hold that, when either Fleet or petitioner's office clerk knew that Harms was a broker, and would furnish "Croasdale's barge," there was a complete disclosure of the fact of agency and the identity of principal.

Had this very plastic arrangement been reduced to writing, it would have been within Goodenough v. Thayer, 132 Mass. 152. It may be emphasized that we hold the facts to show complete actual disclosure, within the rule as often stated. See Horan v. Hughes (D. C.) 129 Fed. 248, affirmed 129 Fed. 1005, 64 C. C. A. 581, for a case of invoking this rule in respect of a charter.

We do not dwell on the total failure to prove the facts as alleged, and fully denied in answer. Nor do we regard it as profitable to consider the sufficiency of facts reasonably putting on inquiry the person who subsequently seeks to hold the agent for lack of disclosure, though on this point the court's point of view in Bashinsky v. Sunset (D. C.) 272 Fed. 120, and Great Lakes Co. v. Worthington & Co. (D. C.) 147 Fed. 926, may be noted. Nor is this decision grounded on any custom of maritime or harbor business, though the force of custom in all maritime affairs is very great, as has been often said. The Serapis (D. C.) 37 Fed. 436, is an instance of custom perhaps unconsciously modifying the rigor of the rule here contended for appellee. Nor do we rely on the British decisions on this point of agent's liability, which are so affected by customs of trade as to be inapplicable without careful and usually unprofitable study.

We have assumed arguendo that (1) an implied warranty, i. e., something reasonably derivable from what was said or written, and, though part of the contract, collateral to the express object of it (Chanter v. Hopkins, 4 M. & W. 404), can arise or be inferred from any view of the evidence herein; and (2) that compliance with the request made of a well-known broker to "send another lighter over" can be construed as a charter of the boat by the broker to the requesting party. Those assumptions are not to be taken as holdings or findings.

As we have found that no cause of action existed against Harms Company, the case may stand as if Croasdale alone had been brought in under the rule; we may take this course on this new trial, but hold that election should have been required below.

Decree modified, by directing dismissal of libel as against Harms Company; in other respects, affirmed, with interest, and without costs to any party but Harms Company, which will recover costs of both courts against petitioner.

MAYER, Circuit Judge (dissenting in part). In so far as the court holds that the decree below should be modified, by directing dismissal of the libel as against Harms Company, I dissent. On this branch of the case I coincide, in substance, with the views set forth in the opinion of the District Judge.