## JOHNSON & HIGGINS v. CHARLES F. GARRIGUES CO. et al.

Circuit Court of Appeals, Second Circuit. January 7, 1929.

No. 72.

Augustus N. Hand, Circuit Judge, dissenting in part.

Rumsey & Morgan, of New York City (Mark W. Maclay and John Tilney Carpenter, both of New York City, and John A. Graves, of Wilmington, Del., of counsel), for appellants.

Bigham, Englar & Jones, of New York City (T. Catesby Jones and James W. Ryan, both of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge. The steamship Hallfried, in from Norway, on April 18, 1920, carried 8,460 casks of nitrate of ammonia, under a contract by which the Hercules Powder Company agreed to purchase from the Norwegian Nitrogen Products Company, Inc., 4,000 net tons, "c. i. f. New York," "net cash against Norwegian shipping documents in New York on arrival of goods."

The materials were shipped, consigned to Charles F. Garrigues Company. On April 19, 1920, a fire and explosion occurred, damaging some of the cargo.

On April 21st, shipping documents consisting of invoice, weight sheets, insurance certificate, and bill of lading for 8,460 casks of nitrate of ammonia, were first tendered to the appellant Hercules Powder Company by Charles F. Garrigues Company, agent for the seller. A certificate of insurance and not a policy was furnished. The appellant Norwegian Nitrogen Products Company, Inc., refused to accept the documents or pay for the goods, because the certificate of insurance was said not to be the equivalent of the policy, and it asserted that it was purchasing documents, and not nitrate of ammonia. The fire destroyed a portion of the material prior to the tender of the documents, but delivery was made to Charles F. Garrigues Company of the goods here involved, and it signed a general average agreement on April 28, 1920. On May 7, 1920, appellants agreed that delivery might be made of the saved and sound goods, and deposited the purchase money of the entire shipment in escrow, to be released to the seller upon satisfactory proof that the goods were fully covered by insurance at the time of the loss. Subsequently, on May 8, 1920, Charles F. Garrigues Company delivered the cargo to the appellant Hercules Powder Company. On January 15, 1921, the seller and the appellant Hercules Powder Company entered into a further agreement in writing, assigning the claim which it, the appellant, had against the insurance company, and the money, held in escrow, was released.

This suit is by the average adjusters appointed by the master, as trustees for whom it may concern, to recover the contribution in general average due from that part of the cargo which was delivered in sound condition to the appellants. The appellees had a possessory lien on this nitrate of ammonia for the contribution due; by delivery of the cargo, without requiring cash payment, the lien was lost. But this suit will lie in personam, resting upon proof that delivery was accepted by appellants May 7, 1920, of such part of the nitrate as was in sound condition, and, having accepted the benefits, with knowledge that the fire had occurred and that salvage claims and other general average expenses were incurred, there is an implied agreement to pay in contribution. United States v. Cornell Steamboat Co., 202 U. S. 184, 26 S. Ct. 648, 50 L. Ed. 987; The Davis, 10 Wall. 15, 19 L. Ed. 875; Maru Navigation Co. v. Societa Com., etc. (D. C.) 271 F.

97; Dupont de Nemours v. Vance, 19 How. 162, 15 L. Ed. 584.

■ Moreover, the appellants here must be held to have ratified the action of their agent, Charles F. Garrigues Company, in executing a general average agreement which was incident and necessary to a delivery being obtained by the appellants. They, by accepting delivery of the sound cargo on May 7, 1920, impliedly agreed that they would pay the contribution due on such sound cargo as was delivered. This would be true, irrespective of when title passed under the sales contract. The Hercules Powder Company had delivered to it on May 7, 1920, 2,077 casks of nitrate of ammonia, and the Norwegian Nitrogen Products Company, Inc., 17 casks of nitrate of soda.

■ Contribution in general average is required, where the ownership of the goods is established in a respondent, and, on tender at destination of the sound goods which have been saved, delivery is accepted. The claim advanced, that in place of the policy of insurance there was tendered only a certificate, is of no importance. The appellants never questioned the fact that the documents had been tendered. They doubted whether they were in proper form, so as to extend the insurance coverage.

■ The c. i. f. contract is one for the sale of goods by the delivery of documents, and if this contract be not a c. i. f. contract, it differs only in that, in addition to the delivery of documents, a condition required performance of actually having the vessel with the goods on board arrive at the port of New York. The seller was not obliged to discharge the cargo from the vessel at New York. If tender be made of the documents, and the goods are known to the parties to have been lost or damaged in transit, it is settled that this makes no difference, for both risks are on the buyer. But we need not concern ourselves with the question of when title passed, since there was a subsequent delivery and acceptance of the goods by the appellants.

■ Both appellants argue that the appellee has elected to hold the agent, and hence has lost all rights it might have against them. The argument is that, if Charles F. Garrigues Company was the agent for the appellants, appellee knew, when it sued Charles F. Garrigues Company and the latter filed its impleading petition on January 11, 1923, that the appellants had contracted to purchase the goods, and that it knew subsequently all the terms of the contract when answers were served to the appellee's interrogatories on June 16, 1926, and July 4, 1926, respectively. The argument proceeds that appellee knew the terms of the contract on December 7, 1926, when appellants' proctors voluntarily sent an exact copy of the purchase contract; that following the receipt of this copy of the contract, and having previous knowledge of all the facts, it sent a letter to the proctors for the agent on December 8, 1926, accepting an offer and confirming an understanding whereby the agent gave consent to the entry of an interlocutory decree, which was not to become a final decree until steps were taken to collect upon any other decree which might be obtained against the appellants, who were brought in, and if collection were made, whatever sum it might be, would be deducted from the balance to be entered as a judgment against the agent without costs. It was also agreed that the appellee would assign, if requested, the agent's claim against the insurance company for funds in its hands.

When, on May 8, 1920, the agent delivered the goods to the Hercules Powder Company, a promise was implied on its part to pay the agent the contribution which it had undertaken to pay, and when delivery was made in accordance with the contract between the Norwegian Nitrogen Products Company and the Hercules Powder Company, the Norwegian Company was acting as the principal of the agent Charles F. Garrigues Company. This latter agreement was made in order to settle any question which might arise about the validity of the insurance tendered to the Hercules Powder Company under the contract. Nothing in it disturbed the relations which followed from the delivery of the goods which were subject to a lien. The Hercules Powder Company was obliged to make good to its agent, Charles F. Garrigues Company, any contribution which the law implied. This appellant argues that it had no knowledge of the agent's contract with the appellee. However, the facts were known which created the general average contribution lien, and it was known that the agent was in possession of the goods. The agent could only have obtained possession by promising to pay the contribution or by assuming, by an implied promise, for the ship did not voluntarily release the lien. It was not essential to establish a ratification, by this appellant, of the agent's agreement. Its obligation was created because it got the benefit of the service rendered and accepted it with knowledge of the facts.

■ The appellant Norwegian Nitrogen Products Company, Inc., was clearly established

to have been the principal for the purchase of its casks through the Charles F. Garrigues Company, its agent. This relationship was well known to the appellee when, on December 31, 1926, it took a decree reserving the right to proceed against the Norwegian Nitrogen Products Company, Inc., but not electing to hold them alone. It was impossible, in legal contemplation, to hold the agent and the Norwegian Company. The Jungshoved (C. C. A.) 290 F. 733; Barrell v. Newby (C. C. A.) 127 F. 656; Berry v. Chase (C. C. A.) 146 F. 625; Georgi v. Texas Co., 225 N. Y. 410, 122 N. E. 238. Because the appellee sued the agent to judgment after a disclosure of the facts as stated, we must regard that as an election upon its part to hold the agent liable, and to discharge the principal, Norwegian Nitrogen Products Co., Inc.

Accordingly the decree will be reversed, with costs, as to the appellant Norwegian Nitrogen Products Co., Inc., and affirmed as to the Hercules Powder Company, with costs.

Decree modified accordingly.

AUGUSTUS N. HAND, Circuit Judge (dissenting in part). While I quite agree as to the affirmance of the judgment against Hercules Powder Company, I differ with the decision of the majority of the court in reversing as to Norwegian Nitrogen Products Company, Inc. A dissent may perhaps be thought futile, in view of the recent decision of this court in The Jungshoved (C. C. A.) 290 F. 733, and the New York Court of Appeals in Georgi v. Texas Co., 225 N. Y. 410, 122 N. E. 238. But, as I feel that the doctrine of election ought only to apply to a case where there has been both judgment and satisfaction, and that anything less than a complete satisfaction or an estoppel in pais affords no logical basis for barring a remedy against both agent and undisclosed principal, I must record my disagreement, even though it be a case of vox clamantis in deserto.

Here the intention not to abandon the claim against the principal is undisputable, and the decree against the agent Garrigues was only interlocutory and decreed no payment of damages by the latter. It was always, therefore, within the control of the court. In this respect it differed from the judgment in Georgi v. Texas Co., supra, which was final. In Beymer v. Bonsall, 79 Pa. 298, the court said: "The principal has no right to compel the creditor to elect his action, or to discharge either himself or his agent, but can defend his agent only by making satisfaction for him." Professor Mechem, in his article in 23 Harvard Law Review, at page 592, says this is "the sound and natural view." See, also, Mechem, Agency (2d Ed.) § 1751.

So far as I can discover, the Supreme Court has not closed the question. In fact, that court said in Friederichsen v. Renard, 247 U. S. at page 213, 38 S. Ct. 452, 62 L. Ed. 1075, about the doctrine of election of remedies, as related to alternative causes of action against the same person, that it "is a harsh and now largely obsolete rule, the scope of which should not be extended." This I believe to represent the general view of modern legal scholars and commentators as to the doctrine of election. By their support, and the precedent of Beymer v. Bonsall, supra, I am emboldened to dissent.

The decree below should be affirmed, not only against Hercules Powder Company, but also against Norwegian Nitrogen Company, Inc.