## NELSON BROS. COAL CO. v. PERRYMAN-BURNS COAL CO.

District Court, E. D. New York.

July 10, 1930.

William F. Purdy, of New York City, for Nelson Bros. Coal Co.

Pickett & Pickett, of Brooklyn, N. Y. (Robert Phillips, of New York City, of counsel), for Perryman-Burns Coal Co.

INCH, District Judge.

Libel filed by Nelson Bros. Coal Company to recover for certain salvage service performed, for and at the request of the respondent Perryman-Burns Coal Company, Inc.

The services consist of furnishing certain barges, service of wreckers and divers, in connection with the salvaging and raising of a coal barge (Harlem) and her cargo of coal.

It was conceded at the trial that, if libelant was entitled to a decree, it should be for the sum of $1,067.11.

The barge Harlem belonged to libelant.

Respondent claims that libelant also owned the coal. It also claims that the barge was unseaworthy.

On these two grounds it has defended what would otherwise seem to be a clear case for libelant.

The facts presented are somewhat unusual.

There is no doubt but that libelant, by an oral contract, between Mr. Nelson of libelant's concern, who has since died, and Mr. Thompson, a salesman for the respondent, and who was called as a witness by libelant, intended to buy some coal, to wit, approximately 488 tons, and that libelant was to send one of its barges to respondent's place of business to receive the coal, the respondent having no available barges, the coal to be delivered by respondent to libelant at the latter's dock in Gowanus Canal.

The barge Harlem arrived and was loaded with the coal and towed to a place about 200 feet from libelant's dock, where, late on the evening of November 25, or early morning of November 26, 1924, she was found in a sunken condition. She had left the coal pier of respondent at Undercliff on November 22, 1924. The Gowanus Canal is a very congested place, and it is "quite customary for it to be blocked up with barges," so that "at times barges are detained for maybe two or three days before they can get up to their destination."

The arrangement testified to by the salesman for respondent was that the latter "was to deliver the coal to Nelson Bros., in their boat, at their dock."

It was never actually delivered. Assuming, however, that the question of delivery is not considered essential, we come to the first defense of respondent.

This is that title to the coal had passed to libelant when the coal was placed on its barge.

The contract as to the sale was oral. Title passed according to the intention of the parties. To be sure there is testimony as to a custom that title was not to pass at that time, but aside from this testimony there is evidence in the record which justifies a finding that title did not then pass.

Nelson, of libelant's concern, is dead. His testimony is not available. Thompson, the other party to the oral agreement, although called by libelant, naturally was not a friendly witness, although it would not be fair to call him hostile. He testified as to this custom, but sought to explain it away.

However, subsequent acts of the respondent speak louder than words. Nor is there lacking plain admissions of respondent which a court, under such circumstances, can properly consider. These are entirely inconsistent with this claim now set up by the respondent in order to avoid its liability.

A brief reference to these may be made.

It seems that the respondent had insured the coal, and, when the accident thereto was discovered, called upon the insurance company to pay them for same, and pursuant thereto duly filed a proof of loss, duly verified by the president of respondent. Libelant's Exhibit B. In this proof of loss he expressly states *"the interest of the insured in the property is that of owner."* (Italics mine.)

Upon the refusal of the insurance company to pay, suit was commenced by respondent against it, and in the complaint, again duly verified by this president of the respondent (Libelant's Exhibit A), reference is made to this proof of loss, stating that same "stated all the matters and things required by said policy to be stated to make due proof of loss thereunder." Paragraph 8.

This proof of loss was dated December 24, 1924. The complaint was dated April 13, 1925. They were both made by the president of the respondent. He certainly knew or should have known what the contract with libelant was. Ample time had elapsed in which to ascertain the facts. He swore to both papers.

It is apparent therefore that such evidence indicates that, not only the title to the coal did not pass, but that it was not intended, by the parties, to pass by this mere acceptance of the coal, for purpose of transportation, by the bargeman in charge of the barge Harlem. This agrees with the claim of libelant.

The remaining defense is that the barge Harlem was unseaworthy.

The burden of proof as to this defense was upon respondent.

No one knows what actually happened to make the barge sink. At least no eyewitness was produced.

The bargeman does not seem to have been available for the trial, and there is no proof that he is still in the employ of libelant. Libelant had no part in the towage of this

barge. It did not know of the accident until some time after it had occurred.

Respondent relies upon cases where unexplained sinking of a vessel occurs in a sheltered berth, such as The Jungshoved (C. C. A.) 290 F. 733.

But the evidence here does not show such berth, nor does it show what had happened to the barge in the considerable period while she was under the sole control of the respondent.

Where a case is so presented, all evidence which may possibly throw some light on the subject must be carefully considered. There is such evidence.

We find in the sworn statement of the president of the respondent contained in its complaint (supra) the following: .

"Fifth: Said shipment of coal was loaded in the barge Harlem, an approved and seaworthy barge, on said 22nd day of November, 1924."

Further the allegation by this same official, apparently based on information he possessed of the cause of the sinking of the barge. This is as follows:

"Sixth: On information and belief, between the hours of ten o'clock P. M. November 25, 1924, and four o'clock A. M. November 26, 1924, and before the said cargo of coal was safely landed at the place of destination aforesaid, the said barge Harlem sank in the waters of said Gowanus Canal with said cargo of coal on board. The sinking of said barge was caused by the unusual tidal conditions existing between the hours mentioned in the last preceding paragraph of this complaint, that is to say, while said barge was lying in said Gowanus Canal, and at about one o'clock A. M. November 26, 1924, an exceedingly low tide prevailed and as a result of such low tide the bow of said barge grounded on the bottom of said Gowanus Canal subjecting the said barge so loaded to severe strain and thereby causing the seams in the bottom of said barge to open and large amounts of water to leak into and fill said barge, which with the weight of said cargo of coal caused said barge to sink to the bottom of said Gowanus Canal."

Thus the respondent in 1925 alleged it was possessed of information as to the definite cause of the sinking of the barge, which it alleged had been seaworthy when it left respondent's dock.

Why such information was not presented at this trial may be unnecessary to inquire, for, if produced, it would have disposed of this defense of unseaworthiness here based solely on the rebuttable inference that a boat must have been unseaworthy to sink without apparent cause. The libelant was unable to produce it.

Libelant urges, and I think properly, that the respondent should not be permitted to thus "blow hot and cold" according as its interest may appear.

Certainly a verified proof of loss and a verified complaint duly sworn to by the president of respondent must be expected to be given weight. Morse Dry Dock & Repair Co. v. Munson S. S. Line (D. C.) 155 F. 150–155, affirmed 158 F. 1021 (C. C. A. 2d).

To allow such defenses to prevail under such conditions would be most unjust.

This disposes of the case, and a decree is directed for libelant for the amount agreed upon, together with interest and costs.