## THE EVELYN.

## THE SENTINEL.

**F. J. KERNER COAL CO., Inc., v. J. J. KEHOE, Inc.**

Nos. 12982, 13093.

District Court, E. D. New York.

July 6, 1932.

Bigham, Englar, Jones & Houston, of New York City (R. F. Shaw, of New York City, of counsel), for libelant F. J. Kerner Coal Co.

Macklin, Brown, Lenahan & Speer, of New York City (Richard F. Lenahan, of New York City, of counsel), for libelant United States Barge Corporation.

Foley & Martin, of New York City (William J. Martin, of New York City, of counsel), for the Sentinel.

GALSTON, District Judge.

Under stipulation these cases were tried together.

The barge Evelyn, having been loaded with 517 tons of coal three weeks before, was on September 2, 1931, towed to Pier 8 at Tompkinsville (Stapleton), Staten Island. Such delivery of the cargo to the libelant F. J. Kerner Coal Company was in accordance with the terms of the bill of lading.

So far as the record discloses, there was no proof of a contract beyond that point; but on the night of September 3, 1931, at 1:30 a. m., the tug Sentinel, with the barge Perfect in tow, came up, and lines were put out from the Perfect to the Evelyn; and the Sentinel and her tow proceeded from Stapleton for Mill Basin. Apparently no difficulties were encountered until the tow rounded Coney Island Point and arrived in the vicinity of Coney Island Pier. The Perfect then signaled to the Sentinel that the Evelyn was sinking. The bargee of the Perfect, in order to prevent her from being swamped, was obliged to cut the hawser to the Evelyn, and shortly thereafter the Evelyn sank.

The libelant the F. J. Kerner Coal Company, Inc., as the owner of the cargo, filed its

libel against the Sentinel, and the barge Eve-lyn was impleaded by the tug; and the owner of the Evelyn also filed a libel against the Sentinel.

It is the contention of the libelants in both of these causes that the weather conditions were such, in continuing to round Coney Island Point in the face of what is alleged to have been unfavorable conditions, as to make the conduct of the tug negligent.

There is contradiction in the testimony of the various witnesses who describe the prevailing weather conditions. I think the weight of the evidence, as well as the credibility of the witnesses, all point to the conclusion that there was nothing untoward in the state of the weather or of the sea that could justify the imputation of negligence to the tug's captain in proceeding around the point. The testimony of independent witnesses, such as her captain and that of the master of the Socony No. 14, must be accepted as against that of the libelant's witnesses. The testimony of Gray, of the Coast Guard, would indicate that at the time of the accident, 8 a. m., the sea was not so rough as later in the morning. But the condition of the sea was not unusual. Fishing boats were out. A motorboat, twenty-one feet long, was run out at 11:30 a. m. of the same morning to place buoys at the point of the sinking, yet no waves washed over her. The captain of the ferryboat Murray, which plied from Neponsit, had a view of the open sea and saw no white caps.

I find that the Evelyn sank without fault of the Sentinel. What caused the sinking does not appear from the proofs, and the court is left merely with the hazard of venturing possibilities. There may have been unseaworthiness of the barge. She might have struck a submerged object, or, as has been suggested, she might have sprung a leak. She may have been overloaded; but none of these possibilities can be based on the proof that was offered.

So far as the liability of the Evelyn to the owner of the cargo is concerned, there was no proof of obligation to carry the cargo beyond Pier 6, Stapleton; that is, its obligation under the bill of lading ended there. In the absence of proof as to what contract, if any, existed between the cargo owner and the owners of the Evelyn after the undertaking contemplated by the bill of lading had been completed, there can be no finding against the Evelyn. Had there been a contract of carriage, then what was said by Judge Hough in The Jungshoved (Barge Crown), 290 F. 733, 734, 1923 A. M. C. 630, at page 632 (C. C. A.) would of course be pertinent: "it follows that the fact stands uncontradicted that the Crown was tendered as suitable to carry the load for which her size fitted her, and under less than that load, in smooth water and calm weather, she sank; in the picturesque phrase of the waterfront, 'she just faded away' without explanation, then or since. This raises a presumption of unseaworthiness (Dupont v. Vance, [1856] 19 How. 162, 15 L. Ed. 584; The Kathryn B. Guinan [2d C. C. A. 1910], 176 F. 301, 99 C. C. A. 639), which, though rebuttable, has not been met. Therefore the lighter and her owner are liable, and may be held for damages if properly sued." See, also, The Harper No. 145 (C. C. A.) 42 F.(2d) 161, 1930 A. M. C. 1211.

In passing it may be said, too, that had the cargo owner established a contract of carriage, the Evelyn would hardly have met the presumption of unseaworthiness by the showing that she had been in drydock six months before and at that time had been recaulked, respiked, and had had general repairs made.

Accordingly both libels will be dismissed.

If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.