247 F.2d 626
 TODD SHIPYARDS CORPORATION, on its own behalf and as
chartered owner and bailee of THE MICHAEL
COSGROVE, Libelant-Appellee,
v.
MORAN TOWING & TRANSPORTATION CO., Inc., Respondent-Appellant.
 No. 315, Docket 24462.
 United States Court of Appeals Second Circuit.
 Argued May 7, 1957.
Decided Sept. 9, 1957.
 
 Adrian J. O'Kane, New York City (Burlingham, Hupper & Kennedy, and Richard W. Palmer, New York City, on the brief), for appellant.
 George L. Varian, New York City, of Crowell, Rouse & Varian (George T. Vayda, New York Ciry, on the brief), for appellee.
 Before CHASE, HINCKS and LUMBARD, Circuit Judges.
 HINCKS, Circuit Judge.
 
 
 1
 This is an appeal from an interlocutory decree in admiralty holding respondent, Moran Towing & Transportation Co., Inc. (hereinafter called Moran), liable for damage to a scow chartered to libelant, Todd Shipyards Corporation (hereinafter called Todd), and also holding that Todd was not guilty of laches. Todd cross-appeals because it was not awarded interest.
 
 
 2
 The scow, Michael Cosgrove, was owned by Shamrock Towing Co., Inc. and had been chartered to Todd for an indefinite period. On March 24, 1948, the Cosgrove was being used to receive girders being removed from a ship in Todd's Hoboken Yard. During the course of the work it was decided to move the Cosgrove to the other side of the pier. To accomplish this, Todd's supervisor of transportation, one Hennelly, telephoned Moran's dispatcher, one Grandone, to request that a tugboat be dispatched to Todd immediately. Grandone said that he had no tugs available at the moment but that he would try to find a tug somewhere. He soon located the tug Sound and Harbor No. 2 (hereinafter referred to as S & H No. 2) which was owned by Sound and Harbor, Inc. Grandone directed Sound and Harbor's dispatcher to order the tug to report to Todd. Grandone informed Hennelly that S & H No. 2 would soon be there. Hennelly knew that S & H No. 2 was not a Moran tug. The tug soon appeared and began shifting the Cosgrove. At the outset of the shifting some of the overhanging girders on the Cosgrove struck the bow of a nearby ship and were forced back against the deckhouse of the Cosgrove causing the damage complained of. The shifting was completed without further difficulty.
 
 
 3
 Todd notified Moran on March 30, 1948 that it was making a claim against Moran for the damage to the Cosgrove which was later surveyed at $2,318. Todd received an invoice for this amount from Cosgrove's owner, Shamrock, and forwarded it to Moran which returned it to Todd without payment.
 
 
 4
 Meanwhile, on March 25, 1948, Moran had sent an accounts payable voucher to Sound and Harbor, Inc. listing $58.97 as being payable for S & H No. 2's work. On March 21, 1948, Moran billed Todd the standard rate, $63.75, for the work.
 
 
 5
 The District Court found that the S & H No. 2 had been negligent in moving the Cosgrove and that this was the proximate cause of the resulting damage to the Cosgrove. This finding has not been appealed. It was also found that Todd had hired Moran to perform the towage and that, in turn, Moran had hired Sound and Harbor, Inc. as its agent or subcontractor. It held Moran liable for the negligence of the S & H No. 2. Todd was held to be free from laches but was denied any interest upon its recovery.
 
 
 6
 Moran asserts that the District Court committed error in two respects. First, Moran asserts that it was merely a broker or Todd's agent for obtaining a tugboat and therefore should not have been held liable for the S & H No. 2's negligence. Second, Moran asserts that Todd is clearly guilty of laches by its conduct in this case.
 
 
 7
 As to Moran's first contention, the law is clear. If Moran had been a mere broker or an agent of Todd for purposes of procuring a tugboat, then the only obligation upon Moran would have been that of exercising care in the selection of a tug and crew. Once having supplied a competent tug and crew Moran would not have been liable for their negligent acts. In this situation Moran would have had no control over the operation of S & H No. 2. The Jungshoved, 2 Cir., 290 F. 733.
 
 
 8
 On the other hand, if Moran had contracted with Todd to perform the task, then Sound and Harbor, Inc. was a subcontractor or agent of Moran, and Moran would be liable to Todd for the begligent performance of the contract. Smith v. Booth, 2 Cir., 122 F. 626.
 
 
 9
 The above statement of the law crystallizes the crucial issue before the District Court: Did Moran contract to perform the towage or was Moran merely a broker? After trial the District Judge found as a fact that Todd had hired Moran and that Moran had contracted to perform the towage. This finding, we think, was not clearly erroneous. Although many of the facts are susceptible of different interpretations there was ample evidence to support the District Judge's finding. Grandone testified that he 'ordered' S & H No. 2 to report to Todd. The billing procedure utilized by Moran is suggestive of a contract between Moran and Todd. Moran settled with Sound and Harbor, Inc. for the use of the tug without regard to Todd. There was no communication directly between Todd and Sound and Harbor, Inc. as to the hire of S & H No. 2.
 
 
 10
 The fact that S & H No. 2 was liable in rem and Sound and Harbor, Inc. was liable in personam for the negligence does not prevent Moran from also being liable. Cf. Rice v. The Marion A. C. Meseck, 2 Cir., 148 F.2d 522, certiorari denied 326 U.S. 740, 66 S.Ct. 52, 90 L.Ed. 442.
 
 
 11
 As to Moran's second point, laches is claimed to result from the following facts. Although the incident occurred on March 25, 1948, Todd did not commence suit until November 1949. By that time the S & H No. 2 had been scrapped and apparently Sound and Harbor, Inc. had been dissolved. Thus Moran was unable to claim over against the party primarily liable or the tug. We agree with the District Judge that this is unfortunate. But we also agree that this does not mean that Todd has been guilty of laches. Within one week after the incident, Todd informed Moran that it was holding Moran to blame for the damage. Thus Moran was in a position to know of the claim it faced. Throughout the period which followed the incident the District Court found that negotiations, conversations and correspondence were taking place between the parties. Moran and Sound and Harbor, Inc. were also negotiating during this period. Indeed, although Moran claims that Sound and Harbor, Inc. was dissolved in September 1949, a witness for Todd testified without contradiction that the claim agent of Moran told him on October 10, 1949 that Moran would not recognize Todd's claim and Todd would have to sue so that Moran could implead Sound and Harbor, Inc. One month later Todd brought this action. This was well within the applicable six-year New Jersey Statute of Limitations. N.J.S.A. 2A:14-1. There is also ample in the record to indicate that Todd consistently warned Moran that Todd was not even considering suit against Sound and Harbor, Inc. but was holding Moran liable. Thus through the entire period before actual commencement Moran was well aware of the outstanding claim against it. It was not error to overrule Moran's defense of laches.
 
 
 12
 As to Todd's cross-appeal for interest, both parties agree that the question of interest is within the discretion of the District Court. The Pocahontas, 2 Cir., 111 F.2d 451; O'Donnell Transp. Co. v. City of New York, 2 Cir., 215 F.2d 92. We perceive no reason for holding that the District Court abused its discretion by not awarding interest.
 
 
 13
 Affirmed.